# *Richard Simpson lessee of William Willinck, Nicholas Van Staphorst, Christian V. Enghen, Hendrick Vollenhover and Rutger Jean Schimmelpennick *against* Robert Morris and John Nicholson.

Under the act of 8th April 1785, a warrant dated in 1792, shall be preferred to a later one in 1793, though the latter was first delivered to the district surveyor if the same was not actually surveyed when the oldest warrant came to his hand, and the party was ready with his hands and provisions for the survey.

Different constructions of the law of 8th April 1785.

EJECTMENT for 80,000 acres of land, in Lycoming county.

Two suits were brought ; in one of which the lessors declared as joint-tenants, in the other, as tenants in common. They came on to trial at Williamsport, on the 22d October last, before Shippen Chief Justice and Brackenridge, Justice, when a verdict was found for the defendants, in the Circuit Court.

This was a motion for a new trial, founded on the following facts, which appeared in evidence.

The plaintiff claimed under seventy-four warrants, dated 12th and 13th December 1792. Forty of these warrants were dated on the latter day, and numbered 3000 to 3040 inclusive. Thirty-two of these issued in the names of Herman Le Roy and John Linkland ; and the remaining eight in the names of William Willinck, and the other lessors of the plaintiff, usually called the Holland company.

The defendants claimed under sixty warrants, dated 30th August 1793. Thirty thereof, numbered 4016 to 4045 inclusive, issued in the name of John Nicholson, and the other thirty, numbered 4046 to 4075 inclusive, issued in the name of Robert Morris.

These forty warrants of the Holland company were directed to John Canan, one of the district surveyors, but were not entered in the books of his office. He wrote a letter to John Hanna, his assistant or deputy, in these words :—

                              " Hartslog, 25th July 1793."

" Mr. Wallis is now at my house, he sets off this day for his " camp at Sinnemahoning. He says, there is a large number of " warrants directed to me, a number of which will be directed " to some of the other districts. As I cannot attend at this time " in the district, I hereby authorize you to re-direct such war- " rants as have been directed to me, as the owners of the said " warrants or their agents may from time to time call on you " for, and generally to represent me in the district when I am " absent. Copy of the certificate or direction, you have on the " other side. A B having certified to me, that he cannot find " land in my district for this warrant to his satisfaction, I do

[Willinck's Lessee *v.* Morris et al.]

" hereby certify, that it has not been executed in any district.—
" *As witness my hand the      day of, &c.   For John   [*105
" Canan.   John Hanna.   Then under the surveyor gen-
" eral's direction to the deputy surveyor, write thus :—To C D
" execute this warrant, and make return thereof according to law.
  " For John Canan.                          John Hanna."

In consequence of this letter, and the power therein contained, the said John Hanna re-directed these forty warrants in manner aforesaid, to William P. Brady, the surveyor of the district, No. 5, in which district the lands in question lie, and delivered them to Thomas Hamilton, the agent of the Holland company.   On the 1st September 1793, Hamilton tendered them to the said William P. Brady, who refused to receive them, alleging that they were illegally directed to him.

On the 4th October 1793, the agent of the company obtained a regular, formal re-direction of the warrants from the said John Canan, and on the 11th of the same month, again tendered them to Brady ; but he then also denied to receive them, on the ground of his having been previously suspended from his office a week before, on some charge made against him ; but he being afterwards acquitted of the charge and restored to his office, he received the warrants on the 20th June 1794.

The defendants' original warrants lay in the surveyor general's office undirected, till the 14th November 1793.   But John Barron, a clerk of the surveyor general, having carried up into the country, notes of them, procured copies of those warrants to be struck off at a printing press in Northumberland, and directed them in the name of the surveyor general to the said William P. Brady, and delivered them to him on the 10th September 1793, at Sunbury, requiring him to execute them.   The two sets of warrants being thus in the hands of Brady, he afterwards made the surveys of the land in controversy, at the joint expence of the lessors of the plaintiff and of the defendants, with the mutual assistance of their hands and stocks of provisions, and declared that the board of property should determine, who were of right entitled thereto.

The judgment of the board of property, was in favour of the now defendants.   The chief contest before them, was whether the defendants' warrants had regularly issued, before they were directed by John Barron, at Sunbury.   They decided, that the warrants had been sent to the governor, on the 30th August 1793, and considered it highly probable, that the sixty warrants were signed and sealed, before the offices were closed by reason of the yellow fever.

*Hereupon the plaintiff brought his ejectments ; and   [*106
on the late trial, three questions occurred.

1. Whether under the act of assembly of 8th April 1785, the posterior warrants of the defendants, being first delivered into the hands of the district surveyor, should take preference of the prior warrants of the plaintiff ?

2. Whether the district surveyor could legally authorize his deputy by his letter, to certify that the warrants were not executed in his district, and re-direct the surveys in another district, he never having the warrants in his hands, nor made any entry thereof in his books?

3. The plaintiffs' counsel contended, that the defendants had no legal warrants whatever, because copies were made out before the governor had signed the original warrants, and before the same were sealed.

The judges who tried the cause, gave no decision on either of the points, but reserved the determination thereof to the whole court. It was however agreed by the counsel to submit to the jury, the determination of the single fact, whether the defendants' sixty warrants were signed and sealed, at the time when the supposed copies of them were delivered by Barron to Brady, at Sunbury, on the 10th September 1793. And if such warrants then existed, they were to find for the defendants, but if otherwise, then for the plaintiff.

The jury, after staying out twenty-four hours, found a verdict for the defendants. Hereupon an entry was made in the Circuit Court of a motion for a new trial by the plaintiff, of the same being overruled, and an appeal made to the Supreme Court, and granted, the certificate according to the late act constituting the Circuit Court being considered as filed.

Messrs. E. Tilghman, Duncan and D. Smith, now argued the motion for a new trial, on the part of the plaintiffs. In lieu of the third point, to which they were concluded as to the signing and sealing of the warrants issued to the defendants, by the finding of the jury, they substituted another question, whether the defendants' warrants not being registered in the proper office, could authorize the making of surveys thereon?

1. By a law passed on the 21st December 1784, (2 Dall. St. Laws 233,) it was declared, that the land office should be opened for applications for lands within the purchase made, or to be made, by the commissioners from the Indians, at the rate of 30l. per 100 acres, on the 1st May 1785. This was succeeded by the law passed on the 8th April 1785, (Ib. 311,) which established a lottery to regulate the preference, which should be *given to applications; and the act of 3d April 1792, (3 Dall. St. Laws 209,) afterwards passed, which reduced the price of vacant lands, and directed that actual settlements, pursued in a specified mode, should give a title to certain lands.

*107]

The legislature, by their act of 8th April 1785, create three descriptions of warrants; 1st, Lottery warrants, which have been lodged and left with one of the deputy surveyors of the districts, within thirty days after the date thereof, for survey and location within his district.

2d, Lottery warrants, which have not been so lodged or left

with a district surveyor, within the said thirty days, but which shall afterwards come to his hands.

3d, Warrants issued on applications to the land office made after the 10th May 1785, in which last class fall the warrants now under consideration.

The preference, as to the first class, is given by section 5 of the act, to those which are lowest in number, in the hands of the deputy surveyor, according to the decision of the lottery.

The second class is declared by the 6th section to be entitled to a priority, but to be posterior to the first. According to the plaintiff's construction of this law, the 8th section thereof, (upon which the difficulty on the first point arises in this cause,) determines their priority by the times of their delivery to the deputy surveyor of the district to whom they are directed.

The priority of the third class of warrants is pointed out in such clear and explicit terms, that it excites surprize how doubts could arise thereon. Towards the close of section 2, it is thus written, and "all applications to the said land office, which shall "be made after the expiration of the said ten days, (that is, "after the 10th May 1785,) for lands within the said late pur- "chase, being made as above directed, shall have priority accord- "ing to the order in which they shall severally come to the hands "of the said secretary, and shall be numbered accordingly, and "not otherwise." And again in § 3, "the quantity of land in "every warrant specified, is to be surveyed and located accord- "ing to the tenor of such warrant."

To these plain, unequivocal words, the defendants' counsel oppose a seeming ambiguity in § 8, which runs thus :—"All war- "rants of survey that shall be issued by the said land office of "this state, after (and the priority of which shall depend on,) the "drawing of the said lottery for lands within the said late pur- "chase, shall be executed in the order, and have preference of "survey, as they shall severally be earliest delivered to the dep- "uty surveyor of the district, to whom they be directed, who "shall make survey thereupon ; and for that purpose the said "*surveyor general shall register the same warrants, and [*108 "every of them, in the order they shall come to his office, "in the manner directed in respect to the warrant first afore- "said," &c.

To effect their construction, the defendants are under the necessity of doing violence to the words of the law, either by striking out the whole parenthesis, in this section, by transposing it, or even by metamorphosing the affirmative of the legislature, into a direct negative, and reading it " (and the priority of which "shall not depend on.) " They not only would render the precise and definite language of the 2d and 3d sections doubtful, but run counter thereto. Where a thing is given or limited by a statute in particular, this by the general words of the statute shall not be taken away ; as is held in Foster's case. 11 Co. 56 b.—Cooke and Gray's case. 5 Co. All the words of a statute

shall be so construed, as that the whole shall stand together. 1 Jones, 26.

If priority of application does not give priority of right, as to the third class of warrants, what reason can be assigned for the secretary's dating and numbering the warrants issued after the 10th May 1785 ? Would it not have been better to have said at once, that the district surveyor should date the times of his receipt of them, and number them accordingly ? But the numbers in the lottery amounted to 570, and that number was pursued by the secretary, as to other warrants.

The legislature in describing lottery warrants, towards the end of the 2d section, and in the beginning of the 4th and 5th sections, use the words, "which shall depend on the drawing of the "lottery," as synonymous thereto, and leave no room to suppose, that they are to be applied to other warrants, in the parenthesis of the 8th section. If the whole parenthesis is to be rejected, the generality of expression will include all warrants under this priority of delivery, and make it the sole test of preference in all cases ; (which will scarcely be advocated,) for no warrants whatever could issue under this law, till the lottery was drawn.

What is to be the rank of lottery warrants of the second description, compared with each other, and with those of the third class, if the 8th section does not apply to them ? Is it provided for, under the defendants' construction ? Whereas, our literal interpretation assigns a distinct station to all the different classes ; and full operation is given to every clause in the law, without absurdity. The first claims priority from their number ; the second from their delivery to the deputy surveyor of the district ; the third from their date and number. But it is to be understood, that as to all the three classes, the persons entitled thereto, must *be ready on the ground, with their hands and provisions, within a reasonable time to complete their surveys.

But the defendants may contend, that our doctrine is pregnant with inconveniences, and will retard the surveys, and consequent settlement of the vacant lands. If it really be so, and the words of the law are clear and decisive, it is not the province of the court to add to, abridge or alter them. We insist also, that greater inconveniences would attend the adverse doctrine, by making the priority of warrants taken out after the 10th May 1785, to depend—1st. On the official forms of the surveyor general.—2d. On a proper understanding with the deputy surveyors.—3d. On the fleetness of the horses of the applicants : —And 4th. On a proper understanding with the chief clerk, in the office of the surveyor general. Here it is observable, that John Barron, the clerk in a public office, became the indefatigable agent of the defendants, got the printed copies struck off without having the original warrants, directed those copies on the 10th September 1793, to the deputy surveyor of the district, and delivered them to him on the same day at Sunbury. The

[Willinck's Lessee *v.* Morris et al.]

mere delivery of warrants to deputy surveyors, without applying for surveys, will as much retard the settlement of the country, as keeping them in the pockets of the parties unexecuted ; and much more so, if it is not requisite, that they should be registered in the office of the surveyor general.

Again.   If the priority of the third class of warrants was to rest on their being lodged in the hands of the deputy surveyors, would not the legislature have made the same provisions as to them, that the offices of the deputies should be kept open within the several districts, and information given thereof, as is directed in the 4th section as to lottery warrants, in order that all persons should be put on one common footing ?   But no such provisions appear.

The great flood of warrants to be issued after the 10th May 1785, was not contemplated by the legislature, when they enacted the law in question ; nor in fact, was it produced, until the act of 3d April 1792, reduced the price of vacant lands to 10l. per hundred acres.

By the 7th section of the law of 21st December 1784, warrants issued in pursuance of that act, shall not be confined to any particular place, but shall enable the applicant to get the same located on any vacant land.   The rights under indescriptive warrants are as well secured by the act of 8th April 1785, as other warrants, if duly pursued.   A warrant which is desired to be located to a particular place, may be superseded by a prior warrant, by § 7.   But why so, if the priority depends on the *delivery to the deputy surveyor ?   He must make the survey, unless a lottery warrant occurs.   The bare entry [*110 in his books of the receipt of it, can give no information where a survey is desired.   The deputy surveyors are not required to keep books, specifying their receipt of any other warrants, than those dependent on the lottery.

It is fully admitted, that under former decisions, as well as the equity of the 7th section of the law, if the defendants' warrants had been located and surveyed, prior to the delivery of the warrants of the Holland land company into the hands of the district surveyor, that the defendants would be entitled to a preference, owing to the gross neglect of the prior warrant holders. —But the case here was otherwise.   The agents of the Holland land company attended in convenient time on the ground, with their hands and provisions ; and the surveys were made at the joint expence of both parties.

2. The certificate of John Canan and the re-direction of the plaintiffs' warrants to the deputy surveyor of district No. 5, were mere formalities.   They may be compared to the certificates of justices of the peace, under the law of 1st April 1784, (2 Dall. St. Laws, 202, § 3,) that the lands applied for by warrant were unimproved.   But in the case of Grant's lessee v. Eddy, *it was resolved by the court, that a warrant for lands in

*Supra, Vol. 2, p. 148.

Northumberland county, founded on a certificate of two justices
in Luzerne county, was not vitiated thereby.  Every thing here
was honest and fair; and the sole intention of the legislature
was to guard against several surveys on the same warrant.  John
Canan had another district, wherein he lived; John Hanna was
his assistant or deputy, resident within the district, to which
the warrants were directed.  He was recognized and known as
the acting officer to make surveys therein.  He moreover, re-
ceived a special appointment to certify and re-direct warrants in
the absence of his principal, and was furnished with proper
forms for that purpose.   He was to do acts merely ministerial,
and which required no exercise of the judgment.

Every act which requires an exercise of the judgment, is not
a judicial act.   A judicial act is supposed to be done, *pendente
lite,* of some sort or other.   A constable may appoint a deputy
to do ministerial acts. 3 Burr. 1262.   A deputy possesses the
whole power of his principal, and of right acts in his name.   A
steward *de facto* may receive a surrender; it gives a colour of
legal authority; and is sufficient in the case of a mere formality.
12 Mod. 466, 470.   Parker *v.* Kell. S. C. 1 Salk. 95.   1 Ld.
*Raym. 658.   Comy. 84.   The recorder sits in the place
of the mayor; he acts and is as his deputy. 12 Mod. 690.
The act of a deputy *de facto,* as where he acted as deputy's
deputy, in the office for three years, though not *de jure,* is good.
Cro. El. 534.   Judicial acts of necessity, done by and under
colour of office, are good.   The law favours acts done by one
on a reputed authority. Ib. 699.   All judicial acts, done by a
bishop *de facto,* as admissions, institutions, certificates and such
like, are good; but not such voluntary matters as are injurious
to the successor. Cro. Jac. 554.   A mayor *de facto,* who has not
been duly qualified, may exercise his office by·sealing a bond
with the common seal, which may bind the corporation. 16 Vin.
114, G. 4, pl. 3.   Cites Lutw. 508, 519.

A deputation need not be in writing, but may be parol.
3 Bac. Abr. 740.   The deputation of an office, is in its own na-
ture grantable by parol; and therefore, though it should be
granted by writing, yet since it is in itself grantable by parol, it
may be revoked by parol. 10 Mod. 74.   A deputy high consta-
ble may be appointed by parol. 3 Burr. 1260.

The powers of direction and re-direction of warrants in the
law, are in the same words.   But the surveyor general cannot
re-direct a warrant, nor has he any controul over his deputy, in
this particular, when he has appointed him.   The district sur-
veyor therefore, as to re-directions, must be considered the prin-
cipal, with power to make deputations.   The execution of a survey
is more a judicial act in an assistant, than the re-directing of
warrants, which follows as a matter of course, in the usual rou-
tine of business, on the application of the party entitled to the
warrant, where it has not been executed in the district.   The
construction asserted against the plaintiff would be mischievous

[Willinck's Lessee *v.* Morris et al.]

indeed, if the deputy district surveyor was not obliged to keep his office open in some known place within his district. Where are the warrantees to look for him? In Philadelphia, Sunbury, or the woods? Is priority of right to depend on casually finding him? It would be too gross a position to say, that the district surveyor, by management, could prefer whom he pleased!

If the chief clerk in the surveyor general's office can direct warrants, at one hundred miles distance therefrom, out of the common course of business, while the warrants remain in the office, why cannot the assistant of the district surveyor, sign certificates and give re-directions, which are mere matters of form? Certainly, the acts of Barron are much more material, than those of Hanna. They were inofficial matters of favouritism, calculated to give the defendants an unfair advantage, in direct contravention of the order established by law.

*The supposed insufficiencies in the re-direction of the [*112 plaintiffs' warrants, were remedied on the 4th October 1793, and on the 11th they were formally tendered to Brady; but the pretext of suspension from office was then recurred to. The surveyor general may displace a deputy district surveyor, and appoint another in his stead; but he cannot suspend him and leave an office vacant, if it be true, that priority of right must be regulated by the priority of delivery of warrants.

So it is, in the cases of the entry of a judgment in the pro-thonotary's office, or the registering of a mortgage in the recorder's office, the former characters must be deemed the rightful officers; until others are commissionated in their room by the governor of the commonwealth.

3. If the 8th section of the law respects warrants of the third class, (those issued after the 10th May 1785) then a defect occurs, as to the defendants' warrants not being registered in the office of the surveyor general, before they were directed by Barron which the law requires. There were eighteen districts ascertained, and approved of under the 12th section, and consequently, the same number of deputy surveyors. The registry of warrants would tend to prevent more than one survey to be made on them respectively, and serve as a guide to the surveyor general, and check to his deputies.

It will probably however be styled by our adversaries a mere informality, which shall not vitiate their warrants: but while want of form is urged against the plaintiff, the defendants are obnoxious to the same objection.

Upon the whole matter it is submitted to the court, that the plaintiff was entitled to recover the premises at law on the trial. The Holland Land Company first made application for lands; first paid their money and obtained warrants duly executed; and have used every reasonable effort in their power to obtain an execution of their warrants.

Messrs. Ingersoll and W. Tilghman *e contra* for the defendants.

[Willinck's Lessee *v.* Morris et al.]

1. The construction of the plaintiff's counsel of the act of 8th April 1785, renders it inconsistent with itself, and with the general prosperity of the country.   In order to secure priority to warrants they must be pursued by early surveys.   In the case of indescriptive warrants in particular, they must be duly followed up, by reducing the generality of their expressions, to locations in certain specified places.   If their preference depended merely on the times when they issued, all unappropriated lands would *be subjected to their claims, and no posterior warrants could possibly be executed with safety.

*113]

The general words of the 2d section, applicable to warrants of the third class are restricted by the terms of section 8.   So of the word tenor in the 3d section, if the number thereof is supposed to be included therein.   The first seven sections will be found on inspection, fully to provide for the priority of lottery warrants.   For what purpose then was the 8th section introduced, unless it applies to warrants of the last description?   To construe the act literally makes it complete nonsense.   Counsel on each side must supply some words; and the introduction of the word not, according to our sense of the law, in the parenthesis of the 8th section, makes the sense complete and perfect.

Such freedoms must of necessity be sometimes taken with statutes, and acts of assembly.   To refer to a few cases : In 1 Dall. St. Laws 25, the word (he) is left out. Ib. 71, the word (and) is omitted. Ib. 416, sec. 2, the words (any lottery or device) are omitted. Ib. 669, sec. 2, the term "applied" is used, instead of "unapplied." In 3 Dall. St. Laws 525, the expressions are "leaving widow nor lawful issue;" but the word no as applied to the widow, has been inserted in the construction of the law.   Many other instances might be given were it necessary.

The 9th section of the act enforces our construction : it obliges the deputy surveyor to give a written receipt for every warrant delivered to him, upon request to him made, specifying the day and year when the same was delivered, &c.

2. In some instances, the deputy has all the power of the principal ; but he has no power to appoint a deputy unless specially authorized. 16 Vin. Ab. 119. L. 3, pl. 1.   Cites Bro. Deputy, pl. 8, who cites 10 Ed. 4, 15.   In Parker *v.* Kelt, cited from 1 Salk. 95, and the other books, the patent was to exercise the office by himself or deputy.   The certificate and re-direction are confidential acts to be done by the deputy surveyor of the district ; the former is to be made in the presence of two witnesses, to guard against all frauds ; but not the latter.   By the 11th section, the surveyor general appoints his deputy surveyors, and is answerable for them ; the deputies give bonds with securities, and take an oath of office, which is to be filed in the office of the clerk of the peace of the proper county.   It is evident, that whoever certifies, should have all the district papers in his hands ; otherwise, the same warrants might be twice executed, and frauds could not be guarded against.   A special trust must

[Willinck's Lessee *v.* Morris et al.]

be strictly pursued. If Canan is to be considered as a princi-
pal, with reference to certificates and re-directions, then he is
empowered as a private person, and not as a deputy, *eo nomine;*
*and consequently, he personally must exercise the au- [*114
thority vested in him.

3. The last objection to the defendants' warrants, founded on
their want of registry, is at war with the other heads of the
plaintiff's argument. The exception pre-supposes, that the 8th
section is referable to warrants of the third class, as there is no
other clause in the act which requires the registry of warrants.
At best however it is but a mere formality, and not essential to
the title of the lands. It is more analogous to the determination
of the court in Grant's lessee *v.* Eddy, than the assumed power
of Hanna. The substantial act, the payment of the money, pre-
ceded the issuing of the warrants, which the jury have found to
have been regularly signed and sealed, previous to the 10th
September 1793, when they were directed. The registry of the
warrants afterwards, *nunc pro tunc*, is not reprehensible, being
done through invincible necessity. The yellow fever greatly
raged in the city, and broke up the public offices. After they
were closed, the same necessity compelled the issuing of a num-
ber of warrants to James Wilson and Samuel Wallis, esq'rs. and
others, on the third October 1793.

The court continued the matter a few days, under advisement,
and then proceeded to give their opinions *seriatim.*

SHIPPEN, C. J. This case comes before the court, upon a
question of construction of the act of assembly of the 8th April
. 1785.

The facts are shortly these : Both plaintiff's and defendants'
warrants were issued after the lottery warrants ; the state has
been paid for both. The plaintiff's warrants are earliest in date
and number ; the defendants' were first received by the deputy
surveyor. The lessors of the plaintiff have however proved,
that theirs were first tendered to him ; but, on pretence of their
being re-directed by the assistant of the deputy surveyor of
another district, and not by the deputy surveyor himself, they
were refused to be received. It appears, they were afterwards
re-directed by the surveyor himself, but still refused by him, on
account of a temporary suspension from his office, but being
afterward restored to his office, he received the defendants' war-
rants. On this case two questions are made : 1st, Whether the
8th section of the act, which gives a preference, from the earliest
delivery to the deputy surveyor, respects warrants of this de
scription, namely, warrants issued after the lottery warrants ?
And 2dly, If it does respect such warrants, whether the earliest
tender of the re-directed warrants did not bind the deputy sur-
*veyor to receive them, although re-directed by the assis- [*115
tant of the first deputy surveyor, and not by himself,
he having previously given such assistant an authority in writ-

[Willinck's Lessee *v.* Morris et al.]

ing to do it? A third question has been made, whether, as the defendants' warrants were not registered in the books of the surveyor general, before the delivery of their warrants to the district surveyor, the defendants can claim title under these warrants, to the exclusion of the plaintiff?

The act is obscurely and incorrectly worded; but we must endeavour, as well as we can, to discover the plan and real intention of the legislature, taking the several parts of it together. The general meaning of the act is, that the first appliers for lands within ten days after opening the land office, should have their priority determined by lottery, their warrants to be numbered as they come out of the wheel, and all dated on the last day of drawing the lottery. These warrants were to be directed by the surveyor general, to the deputy surveyor of some district, to be executed according to their number. The deputy surveyor was not to execute any of the lottery warrants, till after thirty days from their date; the last twenty of the thirty days he was to keep his office open for the purpose of receiving these warrants, and make entries of them in a book to be kept for this purpose. After the expiration of the thirty days, the deputy surveyor was to proceed to execute the warrants according to their numbers, giving preference to the lowest number. All warrants not lodged with the deputy surveyor before the expiration of the thirty days, whatever might be their numbers, were to be considered as posterior to the others; and the act says, shall be surveyed or located accordingly. By which words I understand, that though they lose their priority as to the other lottery warrants, yet they retain priority according to their numbers, as to all warrants issued subsequently to the day of finishing the drawing of the lottery. A provision is made in the 7th section, that a warrant lodged with a deputy surveyor, where the person lodging it fixes upon a particular spot, shall be executed on that spot, unless a person with a prior number shall, before survey, insist on having his warrant laid on the same spot, in which case, such earlier number shall be preferred. Then comes the 8th section, which enacts, that "all warrants "that shall be issued by the land office of this state after (and the priority of which shall depend on) the drawing the said lot- "tery, for lands within the said late purchase, shall be executed "in the order and have preference of survey, as they shall sev- "erally be earliest delivered to the deputy surveyor of the dis- "trict, to whom they shall be directed, who shall make survey " "*thereupon; and for that purpose, the said surveyor "general shall register the same warrants in the order "they shall come to his office, in the manner directed in respect "to the warrant first aforesaid."

The first question then is, to what species of warrants does this section relate? It is contended on one side, that it is meant for the warrants issued after all the lottery warrants are completed; and on the other, it is supposed, that it was intended

[Willinck's Lessee v. Morris et al.]

only for the warrants whose priority was lost, by not being entered with the deputy surveyor within the thirty days ; there being, it is said, no other provision made for their execution but by the 8th section. I own, I cannot discover any thing wanting to complete the provisions as to all the lottery warrants. Their priority is early provided for by the numbers drawn in the lottery, and the 7th section completely provides for their execution, by enabling even those who have neglected to lodge their warrants within the thirty days, to lodge them afterwards, and to require the deputy surveyor to survey them according to their numbers, unless prior numbers shall come to his hands before actual surveys made. Those not entered with the deputy surveyor within the thirty days, are indeed postponed to the entered warrants, yet they are directed by the act to be located and surveyed posterior to the others ; by which I understand, next after them, according to their numbers, and before the subsequently issued warrants can be located and surveyed. The 8th section is introduced as a general enacting clause, and not by way of proviso, as the two preceding sections are, which respect the execution of the lottery warrants. It expressly contemplates warrants issued after drawing the lottery ; and although all the warrants are literally to be issued after drawing the lottery, yet the lottery warrants are to be dated on the last day of drawing it, and unless this expression meant the warrants issued after that day, there was no use or meaning in the expression. For the purpose of having the warrants surveyed according to the time of earliest delivery to the deputy surveyor, it is directed, that the surveyor general shall register the warrants in the order they shall come to his hands, in the manner directed in respect to the warrant first aforesaid. This is a glaring instance of the inaccuracy of the clause ; as, instead of the surveyor general's registering the warrants for the purpose of their being surveyed according to their earliest delivery, it must evidently be meant that the deputy surveyor must register them, in the manner directed in the former provision for surveying the lottery warrants.

The priority or preference, as it respects both lottery war-*rants and others, can only take place, where two or more [*117 warrantees fix upon the same spot of land to be surveyed. The subsequent warrantees seem to stand in need of some provision for their execution, to avoid much confusion and interference by delay. This is done by the 8th section, giving them a preference from an early delivery of their warrants to the deputy surveyor ; which provision don't appear to me at all inconsistent with the priority established for them in the 2d section of the act, if by an equitable construction of the act the 7th section should be extended to them, as well as to the lottery warrants, which in all reason it ought to be ; because an earlier number would have the preference to a later one, in every case where they do not apply for the same land ; and in that case, though

the later number should come to the surveyor's hands before an earlier one, yet if the earlier number be lodged before an actual survey be made for the later, the earlier would have the preference. I say, before an actual survey be made, for this obvious reason; that if the preference arising from the prior number should take place after a survey made for another, and at any indefinite time, not only the labour and expence of making an useless survey would be incurred, but it would be an encouragement to men, having earlier unlocating warrants to lie by, and when they found some valuable lands discovered and surveyed by later numbers, to take advantage of their discoveries, and then come forward with their earlier numbers, and call for a survey upon lands they never before thought of. And this was probably one reason with the legislature, for giving a preference of survey from the earliest delivery of the warrant. Another reason doubtless was, to expedite the sale of the lands, and to prefer the watchful to the dormant applicants. If this be the meaning of the legislature as I have understood it, how are we to satisfy or construe the words contained in the parenthesis in the 8th section, consisting of the words ("and the priority of which shall depend on"?) I acknowledge, the judiciary should not substitute or omit any words in a statute, without evident necessity, and that is only where the words plainly oppose the general sense and meaning of the legislature. In such a case, the judges have construed "or" "and," and "and" "or," as well in acts of parliament, as in wills, in order to effectuate the intention of the legislature. It is proposed at the bar that we should add the word not in the parenthesis. This would certainly be using great freedom with the expressions of the law; yet, if absolutely necessary to the true construction, it might perhaps be justified. It has however occurred to me, that as other mistakes appear in the law, perhaps the legislature have *hastily put the parenthesis in the wrong place. If the parenthesis had been placed after the words "drawing the lottery," instead of before them, the sense would be more complete, and with a small change in the expression, entirely conformable to the construction I have given to the law. The words would then stand thus : "All warrants that shall be issued "by the land office of this state after the drawing the said lot- "tery (and the priority which shall depend thereon") that is, after such priority, "shall be executed," &c. The reading of the clause in this way would, it is true, be attended with the omission of the word "of" before "which," and the insertion of the word "thereon," instead of the word "on;" which however, would be a less violent departure, than substituting a direct negative for an affirmative proposition; and some construction must be made to reconcile the apparent contradiction in the clause. I have suggested, that the parenthesis might have been hastily inserted in the wrong place. This is the more probable, not only from the awkward way in which it stands in the act, but

[Willinck's Lessee *v.* Morris et.al.]

from a circumstance appearing on the Journals of the house. It there appears in the discussion of the act, that the whole 8th section was agreed to by a majority of the house, without any parenthesis, or any word tantamount to it ; and no amendment of the section appears to have been made afterwards. It is probable therefore, that it arose from some sudden motion made, when the bill was about to pass, and without due consideration inserted where it stands ; and this mistake might the more easily pass unnoticed, as the legislature then consisted only of a single branch, and no senate existed to correct the mistake.

If my construction of the act be well founded, it will be unnecessary to enter into the second or third points, made by the counsel on both sides. For whether the certificate and re-direction of the assistant to the deputy surveyor under a power from him be good or not ; or whether the registry of the defendants' warrants by the surveyor general was made in time or not, will be immaterial, if we call in aid of our construction on the first point, the 7th section of the act. It appears clearly in the case, that before any survey was made on the defendants' warrants, the plaintiff's warrants were actually re-directed with the proper certificate of the deputy surveyor himself, and were earliest in number, and that the surveys were made with the joint assistance of the plaintiff's and defendants' hands and provisions, and declared by the deputy surveyor to be made for such of the parties, in whose favour the Board of Property should determine ; and it will follow from my own principles on the first point, that the determination of that Board ought to have been in favour of *the claim of the Holland land company, and not of the defendants.                                                    [*119

I am therefore of opinion, that a new trial should be awarded.

YEATES, J. The 2d section of the act of 8th April 1785, expressly declares, that all applications to the land office made after the 10th May following, shall have priority according to the order, in which they shall severally come to the hands of the secretary, and shall be numbered accordingly and not otherwise. And the 3d section directs, that the deputy surveyor of the district, on the direction of the surveyor general, shall duly execute the warrants, according to the tenor of such warrants. These clauses are free from all doubt and ambiguity ; and strong expressions must necessarily be produced to shew, that the will of the legislature in these particulars, has been changed. I have not for my part, been able to discover such intention.

I fully agree with the plaintiffs' counsel, that the priority of right of the three different descriptions of warrants, as they have classed them, is ascertained by the law. The preference of the first class rests by the 5th section, on their number ; of the second by the 8th section, on their delivery to the deputy surveyor; of the third, by the 2d and 3d sections, on their date and number. The 7th section in my idea, relates to any species of war-

rants of higher numbers, the locations whereof have been desired at particular places which are afterwards superseded by lottery warrants (and no others,) of a lower number. Such are the words of the law, independent however, of the positive provisions of any law on the subject, it seems unquestionable, that the not pursuing an early indescriptive warrant with due diligence, by a delivery of such warrant to the deputy surveyor, and application for a survey, will postpone such early warrant to a latter one, followed up by a survey. On any other principles, the appropriation of lands and settlement of the country, would wholly depend on the will or caprice of individuals, possessing early warrants, as to the times when they thought proper to reduce the same to a certainty, by surveys.

But unless the 8th section is referred to lottery warrants, not lodged or left with one of the deputy surveyors, within the thirty days after drawing of the lottery, the priority of such lottery warrants, considered in relation to other warrants of the same class, or to those not dependent on the lottery, remains in my apprehension, unfixed and unsettled. The words descriptive of lottery warrants, in the 2d and 5th sections, are again repeated in the 8th section ; and I do not feel myself at liberty to convert the affirmative words of the legislature, into negative terms. I

*120] *see no necessity for so doing. The construction under the intestate act, is the strong case relied on by the defendants' counsel ; "where the intestate dies, leaving widow, nor lawful issue," does not appear to me to be a parallel case ; because there, the insertion of the word "no," is absolutely necessary to give a meaning to the clause, and the sense of the passage evidently requires it. By the construction I have adopted, all the words of the act, so far as they respect priority of rights under warrants, are carried into full operation, and every string of the instrument renders its full sound. At the same time, I freely admit, that the words " surveyor general," in the beginning of the 8th section, are wholly unintelligible to me, as they are used ; and I find myself compelled to read in their room, " deputy surveyor of the district." For I cannot conceive, how the registry of warrants by the surveyor general, in the order they shall come to his office, can subserve the purpose of showing the order and preference of survey of warrants, expressly made to depend on the earliest delivery thereof to the deputy surveyor of the district. But by substituting " deputy surveyor of the district," for " surveyor general," the object of the legislature is fully attained. When such lottery warrants of the second class, are registered in proper books, in due succession, by the deputy surveyor, in the order they shall come to his office, all mistakes are prevented, and frauds guarded against.

Thinking as I do, I deem it superfluous, to decide on the other points, made by the counsel in their argument. But I cannot avoid saying, that the certificate and re-direction by Hanna, was equally as proper and correct, as the direction by Barron,

[Willinck's Lessee v. Morris et al.]

under all the circumstances of the present case. The conduct of the latter, was not sanctified by usage, nor the usual forms of the office of the surveyor general; and therefore could not be considered as the constructive act of the principal. It did not quadrate with the spirit of the words, in the close of the 2d section of the act, that "all warrants should be made out in their "proper order, as soon as conveniently might be, without any "needless delay, and without partiality."

The want of registry of the defendants' warrants, by the surveyor general, cannot affect their claim. I have no hesitation in saying, that the words "surveyor general," have been inserted through mistake.

On the whole, I am of opinion, that a new trial should be granted.

SMITH, J. I am of opinion with the plaintiff on the two first *points and adverse to him, as to the legality of Barron's [*121 direction.

I regard the words of the second section of the law, applicable to warrants taken out after the 10th May 1795, as perspicuous, clear and explicit. Their priority of right depends on their date, as the applications come to the hands of the secretary of the land office. Therefore the most unambiguous expressions are necessary to deprive such warrants of the priority arising from their date. The words of the 8th section are not equally clear and plain; and though the parenthesis may have been put in the wrong place, yet I do not take it to be the office of judges, to declare, that an express provision is repealed and annulled by subsequent ambiguous expressions in the act.

Supposing however the case to be otherwise, I strongly incline to be of opinion, that the re-direction of the warrants of the Holland land company, by John Hanna, the assistant of John Canan, was good in law. Canan did not exceed his powers, when he deputed Hanna to sign certificates, and give re-directions. These were acts not judicial in themselves, but merely ministerial.

I also think, that the direction of the defendants' warrants, to the deputy district surveyor, was good in law, and sanctified by the usage of the surveyor general's office. The defendants had paid their money to the state. The land office was shut, and the public business was impeded by the violent fever which prevailed in the city.

On the first point, I have no difficulty whatever, resting on my mind. On the two others, I have stated the strong inclination of my mind, but give no explicit opinion thereupon.

I think, a new trial should be awarded.

BRACKENRIDGE, J. I agree with the chief justice in his general construction of the law of 8th April 1785. But I think, that either the words of the 2d section, as far as they respect the warrants in dispute, or those of the 8th section must fall, being con-

[Cay's Executors *v.* Gibson.]

tradictory to each other. The lottery warrants are done with, when we come to the 8th section. Nothing more was to be done with them. Nothing more was needed. I am of opinion, that we must either insert the word "not," in the parenthesis of that section, or must transpose the parenthesis, in the manner already stated. At the same time, I see no reason for altering the words "surveyor general," into "deputy surveyor." The view of the legislature was, that the surveyor general should register the warrants, for the purpose of directing them. Their great object *122] *of the 8th section, was to prefer the diligent warrantees, who first delivered their warrants to the district deputy surveyor.

On the second point, I was induced to think at the trial, that the certificate and re-direction by Hanna, were valid acts, and differed therein from the chief justice. I now think differently, and view it as a special authority given to the district surveyors personally, by the law. It operates as notice, and the deputy surveyors are not to be supposed to know the hand writing of their different deputies, nor bound to act in pursuance of their several re-directions. Yet I conceive, if Brady had made surveys under that authority, they would have been valid. *Quod fieri non debet, factum valet.*

But on the point of Barron's direction, I have no doubts of its illegality. His acts were inofficial, and went beyond the usual forms. The warrants of the defendants were neither in the hands of the surveyor general, nor in his own, but remained in the city.

On this last ground alone, I concur in awarding a new trial.

New trial granted, *per tot cur.*

Referred to in 8 Watts 118.