CHARLES DENNEHY

*v.*

THE CITY OF CHICAGO.

*Filed at Springfield May 12, 1887—Rehearing denied June Term, 1887.*

1. INTOXICATING LIQUORS—*regulations as to selling or giving away— police power.* Police regulations prohibiting sales or gifts of intoxicating liquors are sustained, on the ground that they are established for the prevention of intemperance, pauperism and crime, and for the abatement of nuisances.

2. SAME—*municipal powers to license or prohibit—as to the manner of their exercise—classification as to purposes, quantities, and rates—statutes construed.* The words, "to license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquors," in clause 46 of section 1, article 5, of the act relating to cities and villages, are generic, and authorize the classification of sales and gifts by quantity or purpose, or both, and the imposition of different charges for licensing, as classified, subject only to the qualification expressed in the Dram-shop act, and the amendment thereto.

3. A city or village incorporated under the general law, has the power, not only to license dram-shops to sell intoxicating liquors by retail, and druggists, but also the further power to exact a license for the sale of liquors in a larger quantity than one gallon, classifying such license as a "license of wholesale liquor dealers," as distinguished from a "dram-shop license."

4. Where power is conferred to "license, regulate and prohibit" sales of intoxicating liquor, the prohibition need not be total, but may be applied to any and all sales not licensed by law.

5. The proviso to clause 46 of section 1, article 5, of the act relating to cities and villages, does not affect the question of the existence or extent of the particular power to which it relates, but only the manner and condition of its exercise, and was designed only to produce uniformity as to the mode of granting licenses, and the terms upon which they shall be granted, to the extent that the general law assumes to establish uniformity in those respects. Therefore, the proviso in section 1 of the amendatory Dram-shop act of 1883, must be read as a part of clause 46 of the first named act.

6. SAME—*license fee—as a tax.* The sum charged for a wholesale liquor license is not a tax, but is a burden imposed as the price of a privilege which may be denied altogether. The reasonableness of the amount exacted is not a question for the courts to pass upon.

7. Same—*prohibition of sales, as affecting the manufacture.* A prohibition of all sales of liquors within a city for use there as a beverage, without reference to the quantity sold at one time, which is within the police power, will not affect the manufacture of liquor therein to be sold to druggists, or to be sold for exportation and trade without the limits of the city.

8. Same—*druggists' permits—whether limited as to quantity.* A druggist's permit to sell intoxicating liquors, is not required to be limited to sales in quantities less than one gallon. Under a general permit he may sell in quantities exceeding one gallon.

9. Same—*sale or giving away to minors, etc.—whether restriction limited to quantity.* The power conferred by the law upon municipal authorities to forbid and punish the selling or giving away of liquors to any minor, apprentice or servant, or insane, idiotic or distracted person, habitual drunkard, or person intoxicated, is not to be confined to sales or gifts by the drink, or in quantities less than one gallon. Sales or gifts to persons of that class, of intoxicating liquors, in any quantity, to be used as a beverage, are within the letter and the spirit of the provision.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Criminal Court of Cook county; the Hon. Rollin S. Williamson, Judge, presiding.

Messrs. Barnum, Rubens & Ames, for the appellant:

The ordinance is void, because the city has no authority, under its charter, to impose a license fee upon wholesale dealers in intoxicating liquors. The rule of strict construction prevails as to grants of municipal powers of the character claimed. 1 Dillon on Mun. Corp. sec. 16; Cooley's Const. Lim. *192; Cooley on Taxation, 109; *Commissioners* v. *Newell*, 80 Ill. 593; *Webster* v. *People*, 98 id. 347; *Alton* v. *Insurance Co.* 82 id. 45.

This rule is particularly applicable to the case of taxes on occupations. Cooley on Taxation, 574; *Latle* v. *Williams*, 87 N. C. 126; *Kip* v. *Patterson*, 26 N. J. 298; *St. Louis* v. *Laughlin*, 49 Mo. 559.

Where the prohibiting power exists, the regulating power growing out of and coupled with it, can go any length, and be justified. (*Schwuchow* v. *Chicago*, 68 Ill. 450.) Not so when the regulating power stands alone upon its own merits.

Then it must be exercised for "regulation," not for "prohibition," nor for "revenue." 1 Dillon on Mun. Corp. sec. 357; Cooley on Taxation, 598; Cooley's Const. Lim. 245.

. Under the ninety-first power of section 1, article 5, of the act relating to cities and villages, the city can tax, license and regulate distillers and brewers, but can not prohibit their callings; and the eighty-second power authorizes the city council to direct the location, and regulate the use and construction, of breweries and distilleries in the city. This is inconsistent with the idea that all sales by brewers and distillers can be prohibited.

The key to the proper construction of power 46 is found in the Dram-shop act, clearly showing that both acts refer to sales and gifts for drinking purposes, and not to wholesale dealers.

The proviso in section 1 of the Dram-shop act requires the corporate authorities, in granting licenses, to conform to the general law of the State on the subject. There is no State law for the licensing of wholesale liquor dealers. The permits to druggists are only for retail sales.

The history of the Illinois liquor legislation shows that the only regulation and the only prohibition ever tried, related to the retail grocery business.

A municipal corporation can not, by ordinance, make any thing a nuisance which is not such. *Railroad Co.* v. *Lake View*, 105 Ill. 206.

The ordinance is void, because the license provided for is simply imposed for revenue purposes, and not for regulation purposes. *Mayor* v. *Railroad Co.* 32 N. Y. 273; *Collins* v. *Louisville*, 2 B. Mon. 137; *State* v. *Roberts*, 11 Gill & J. 505; *Mays* v. *Cincinnati*, 1 Ohio St. 268; *Cincinnati* v. *Bryson*, 15 id. 625; *Freeholders* v. *Barber*, 2 Halst. 64; *Kip* v. *Patterson*, 2 Dutch. 298; *Bennett* v. *Birmingham*, 31 Pa. St. 15; *Chilvers* v. *People*, 11 Mich. 43; *Mayor* v. *Zuille*, 3 Ala. 144; *Ash* v. *People*, 11 Mich. 347; *Mayor* v. *Beasley*, 1 Humph. 240;

*Commonwealth* v. *Stodder*, 2 Cush. 562; *City of Burlington* v. *Insurance Co.* 31 Iowa 103; *Home Insurance Co.* v. *Augusta*, 50 Ga. 537; *St. Paul* v. *Traeger*, 25 Minn. 251; *Commonwealth* v. *Markham*, 7 Bush, 486; *State* v. *Hoboken*, 33 N. J. L. 281; *Ex parte Frank*, 52 Cal. 606.

Mr. F. A. HOFFMAN, Jr., and Mr. F. S. WINSTON, for the appellee: ·

The power to prohibit the selling of *any* intoxicating liquors is broad enough to authorize the prohibition of such sales in quantities greater than one gallon at a time. But assuming that no power exists to prohibit such traffic, it by no means follows that it may not be licensed. The right to license any given occupation, of itself carries the right to determine the amount to be paid for such license. *Howland* v. *Chicago*, 108 Ill. 500; *Braun* v. *Chicago*, 110 id. 186; *Lyman* v. *Chicago*, id. 000; *Distilling Co.* v. *Chicago*, 112 id. 19.

The claim that the city can not license or prohibit the sales of liquor in greater quantities than one gallon, because the Dram-shop act refers only to retail sales, and therefore the ordinance is too broad, is answered by *Gunnarssohn* v. *Sterling*, 92 Ill. 569.

It is also contended that the license demanded is so large as to amount to a tax. In answer to this objection, reference is made to the following cases: *People* v. *Thurber*, 13 Ill. 554; *Firemen's Association* v. *Lounsbury*, 21 id. 511; *Insurance Co.* v. *Peoria*, 29 id. 180; *East St. Louis* v. *Wehrung*, 46 id. 392; *Ducat* v. *Chicago*, 48 id. 172; *Packing Co.* v. *Chicago*, 88 id. 221; *Walker* v. *Springfield*, 94 id. 364; *Lovingston* v. *Trustees*, 99 id. 564; *East St. Louis* v. *Trustees*, 102 id. 489; *Ferry Co.* v. *East St. Louis*, id. 560; *Cole* v. *Hall*, 103 id. 30; *Howland* v. *Chicago*, 108 id. 500; *Braun* v. *Chicago*, 110 id. 186; *Distilling Co.* v. *Chicago*, 112 id. 19.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This appeal brings before us for review a judgment of the Criminal Court of Cook county, convicting appellant of selling spirituous and vinous liquors within the city of Chicago, in quantities of one gallon or more at a time, without having obtained a license from the city authorizing such sales. There is no question of fact presented, it being conceded that appellant made the alleged sales without the requisite license, and the only question of law to be passed upon is the validity of the following ordinances, namely:

"*An ordinance concerning the licensing of wholesale liquor dealers:*

"Sec. 1. No person, firm or corporation shall sell or offer for sale any spirituous or vinous liquors in quantities of one gallon or more at a time, within the city of Chicago, without first having obtained a license therefor from the city of Chicago, under a penalty of not less than $50 nor more than $200 dollars for each offence. But no distiller who has taken out a license as such, and who sells only distilled spirits of his own production at the place of manufacture, shall be required to pay the license herein prescribed, on account of such sales.

"Sec. 2. All such licenses shall be issued in accordance with the general ordinances of the city concerning licenses, and for every such license there shall be charged at the rate of $250 per annum."

Other ordinances of the city were in force at the time these were adopted, providing for the licensing of dram-shops upon the payment of $500, and the licensing of brewers and distillers upon the payment of a like sum.

Appellant contends that the ordinances recited are void, for two reasons,—first, because the city has no power, under its charter, to impose a license fee upon wholesale dealers in intoxicating liquors; second, because the license provided for

is simply imposed for revenue purposes, and not for purposes of regulation. The questions thus presented will be considered in the order stated.

*First*—The city of Chicago is incorporated under the general law for the incorporation of cities, villages and towns. (Rev. Stat. 1874, chap. 24, p. 209.) Article 5 of that chapter confers numerous powers upon the city council in cities, and the president and board of trustees in villages, among which is that contained in clause 46, in section 1, which is in these words: "To license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquors, the license not to extend beyond the municipal year in which it shall be granted, and to determine the amount to be paid for such license: *Provided*, that the city council in cities, or president and board of trustees in villages, may grant permits to druggists for the sale of liquors for medicinal, mechanical, sacramental and chemical purposes, only, subject to forfeiture, and under such restrictions and regulations as may be provided by ordinance: *Provided, further*, that in granting licenses, such corporate authorities shall comply with whatever general law of the State may be in force relative to the granting of licenses." Looking at this language alone, it would seem to be as broad and comprehensive as could have been employed to convey the idea of an unlimited and unrestricted power to license, regulate and prohibit, except as affected by the provisos,—for the use of only general language, plainly, to every apprehension, negatives the idea of restriction or limitation. This is, in effect, conceded by counsel for appellant in their very ingenuous and able argument; but they contend that the clause should be read as *in pari materia* with the original "Dram-shop act," (Rev. Stat. 1874, chap. 43, p. 438,) and the amendatory Dram-shop act, approved June 15, 1883, (Pub. Laws of 1883, p. 92,) and in the light of the past legislation of the State upon the question, generally, and the decisions thereon of this court; and that, being so read,

it will be evident that the power to license, regulate and prohibit is intended only to apply to sales in a less quantity than one gallon.

The act in relation to "Cities and Villages" was approved April 10, 1872, and that in relation to dram-shops was approved March 30, 1874, but both acts were incorporated, as they now read, in the revision of 1874; and so it is to be assumed that the language of each act was then in the mind of the General Assembly, and, therefore, that any substantial diversity in the language of the two acts, in respect to the licensing, regulating and prohibiting sales of liquors, etc., is not merely accidental, but is intentional, and because different ideas, in that respect, are intended to be conveyed in the different acts. Section 1 of the Dram-shop act, instead of using general language, as is used in the 46th clause of section 1, article 5, of the act in relation to cities and villages, enacts, "that a dram-shop is a place where spirituous or vinous or malt liquors are retailed by a less quantity than one gallon." Section 3 empowers the county board to grant licenses to keep dram-shops, but contains this proviso: "Such board shall not have power to issue any license to keep any dram-shop in any incorporated city, town or village, or within two miles of the same, in which the corporate authorities have authority to license, regulate, restrain or prohibit,"—not "*dram-shops*," as certainly would have been said if that only had been intended, but the "*sale of liquor*," and this language is repeated in section 2 of the amendatory Dram-shop act.

Our constitution confers power upon the General Assembly to "tax * * * liquor dealers," (sec. 1, art. 9,) and in *Timm* v. *Harrison*, 109 Ill. 601, we held that the term "liquor dealers," as thus used, was generic, and that it was competent, under it, for the General Assembly to classify the different kinds of liquor dealers, and impose differential taxes upon such classes; and so, upon like principle, here, the words, "to license, regulate and prohibit the selling or giving away

of any intoxicating, malt, vinous, mixed or fermented liquors,"
would seem to be generic, and authorize the classification
of sales and gifts, by quantity or purpose, or both; and the
imposing of differential charges for licensing, as classified,
subject to the qualification expressed in the Dram-shop act
and the amendatory Dram-shop act. The power to license
and regulate sales of liquors,—the *genus*,—of course includes
the power to license and regulate "dram-shops,"—one of *the
species;* and hence the question is, not whether cities have
power, by virtue of the clause under consideration, to license
and regulate "dram-shops,"—that is beyond question,—but
whether they have the further power to exact a license for
selling liquors in a larger quantity than one gallon, classify-
ing such license, as contradistinguished from a "dram-shop
license," as a "license of wholesale liquor dealers;" and in
this view, the proviso in the clause of the city and village char-
ter under consideration, that "in granting licenses, such cor-
porate authorities shall comply with whatever general law of
the State may be in force relative to the granting of licenses,"
and the provision in section 1 of the amendatory Dram-shop
act of June 15, 1883, that "it shall not be lawful for the cor-
porate authorities of any city, town or village   *   *   *   to
grant a license for the keeping of a dram-shop, except upon
the payment, in advance, into the treasury of the city, town
or village granting such license, such sum as may be deter-
mined by the respective authorities of such city, town or vil-
lage, not less than at the rate of $500 per annum," etc., have
no tendency to prove that the authority of the city or village
is exhausted when the quantity of one gallon is reached. This
proviso, in other words, does not affect the question of the
extent of the particular power to which it relates. It simply
affects the manner and condition of its exercise, and was
manifestly designed only to produce uniformity as to the mode
of granting licenses, and the terms upon which they shall be
granted, to the extent that the general law assumes to estab-

lish uniformity in those respects; and, therefore, the provision in section 1 of the amendatory Dram-shop act of June 15, 1883, must be read as a part of the clause of the city and village charter under consideration, immediately after the words, "amount to be paid for such license," so that the clause will then read: "To license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, the license not to extend beyond the municipal year in which it shall be granted, and to determine the amount to be paid for such license; [but] it shall not be lawful for the corporate authorities of any city, town or village in this State, to grant a license for the keeping of a dram-shop, except upon the payment, in advance, into the treasury of the city, town or village granting the license, such sum as may be determined by the respective authorities of such city, town or village, not less than at the rate of five hundred dollars ($500) per annum," etc.

But counsel for appellant contend, that the use of the word "prohibit," in the clause in question, shows that it was only intended to confer power to license dram-shops; that the power "to prohibit" must be construed as co-extensive with the power "to license and regulate," and that it could never have been intended to confer power upon cities and villages to prohibit all sales of liquors, etc. There is no question, here, whether the power can be or has been here conferred upon cities and villages to prohibit *all* sales of liquors. No ordinance, here, assumes to prohibit *any* sales of liquors. It is only material to determine whether language, apparently used in its general or universal sense, was, in fact, intended to be used only in a restricted or particular sense because of the inclusion of the word "prohibit."

It is to be observed that the words "wholesale dealer," as used in this ordinance, are purely nominal, fixing an arbitrary classification, without any reference to the circumstances attending the sale, or the use for which the article is purchased.

A person selling liquors in a less quantity than one gallon, or in a larger amount, if to be drank on his or the adjacent premises, is the keeper of a dram-shop, and a person selling liquors in quantities of one gallon or more is a "wholesale dealer in liquors." We must not be deceived by mere names. It is quite apparent that the question before us would in no wise have been different if the Dram-shop act had simply provided that persons should not sell liquors in a less quantity than one gallon, or to be drank on the premises, or those adjacent, without a license authorizing them so to do, and the city had provided, by ordinance, first, for issuing license for the class of sales specified in that statute; and second, for issuing license for sales of one gallon or more, omitting all naming of it, having, of course, the authority conferred by the clause of the City and Village act under consideration. If, therefore, sales of liquors in quantities of one gallon or more, which are not to be drank on the premises of the seller or those adjacent, may properly be prohibited for any purpose, the word "prohibit," as here used, may have effect beyond suppressing dram-shops, and its inclusion, therefore, creates no presumption that the power intended to be conferred was limited to that purpose.

Counsel say: "There could be no such legislation, and no occasion for it, but for dram selling. * * * The dram-shop is the institution, and the only one, calling for regulation or prohibition under either statute, and against it, exclusively, both alike are leveled." The vice of this assumption runs through the entire argument of the counsel, on the effect of the inclusion of the word "prohibit." It is, that the quantity of liquor sold at one time, and the place at which it is drank, —one or both,—are the only inducing causes through which citizens of a community are injuriously affected by sales of liquors therein. Police regulations prohibiting sales of liquors are sustained, upon the ground that they are established for the prevention of intemperance, pauperism and crime, and for

the abatement of nuisances. Cooley's Const. Lim. (1st ed.) 583, and authorities cited. It is manifest that selling drams over the counter, and liquors in greater quantities to be drank in or upon any adjacent premises, are but ways of selling liquors to be used as a beverage; but these are by no means the only ways, although they may be the worst, by which sales for that purpose can be made. Liquors may be purchased in quantities of one gallon or more, and carried off to be drank at the home of the purchaser, or elsewhere other than at the place of sale or on the premises adjacent thereto, and when thus drank, they will, of course, produce the same drunkenness, and the same usual train of personal ills resulting therefrom. The injury to the citizen is as evident in the one case as it is in the other. It is of the same kind in each case, and if there be difference at all, it is obviously only in degree, not in quality; and hence, if the use of liquors as a beverage is injurious to the person, to the degree justifying the prohibition of its sale for that purpose, it is clear the question of the quantity sold at any one time, for that purpose, is immaterial. If the individual may not buy the drink in the saloon, simply because of the injury resulting from drinking, surely he may not be allowed to buy a barrel or a hogshead, and take it into his family, and there drink it.

A reference to previous decisions of this court will show that the right to prohibit sales of liquors in a municipality has never been predicated upon the idea that the quantity sold at a given time was controlling, but that it has always been predicated solely upon the idea that its sale and use as a beverage, without reference to the quantity sold at the time, was injurious to the citizen.

In *King et al.* v. *Jacksonville*, 2 Scam. 305, under power to make ordinances to prevent and remove nuisances, to restrain and prohibit gambling or other disorderly conduct, an ordinance prohibiting the sale of spirits, wine, beer, etc., by a less quantity than one gallon, was sustained.

In *Goddard* v. *Town of Jacksonville*, 15 Ill. 588, under the same power as in the preceding case, and the additional power to "license, tax and regulate auctioneers, groceries, ordinaries, and all places where spirituous or fermented liquors are sold by less quantity than one quart," an ordinance declaring the sale of spirituous liquors a nuisance, and imposing a fine for the offence, was held valid; and the court justified its ruling upon the ground that the sale of liquors for use as a beverage is "hurtful and injurious to the public morals, good order and well-being of society."

In *Byers et al.* v. *President and Trustees of Town of Olney*, 16 Ill. 35, under powers not essentially different from those possessed by Jacksonville, in the case last above cited, an ordinance prohibiting sales in a less quantity than one barrel, was sustained.

In *O'Leary* v. *County of Cook*, 28 Ill. 534, an act prohibiting the sale of spirituous liquors within four miles of the Northwestern University, was sustained as a valid and constitutional enactment, upon the ground that it prevented its use by the students as a beverage.

In *Block* v. *Town of Jacksonville*, 36 Ill. 301, an ordinance of the town declared the sale of liquors a nuisance. The defendant offered to prove that he was a wholesale and retail dealer in liquors; that he had a government license; that he sold no liquor to be drank on his premises, nor suffered any to be so drank; that he kept a quiet, respectable and orderly house, created no nuisance, and had no noise or disturbance on his premises. But the evidence was excluded, and this court held that it was properly excluded, and sustained the ordinance.

In *Kettering* v. *City of Jacksonville*, 50 Ill. 39, the city charter empowered the city council to "regulate, license, tax, prohibit and punish the sale of intoxicating, alcoholic or malt liquors," etc. (1 Private Laws of 1867, p. 346.) The city council adopted an ordinance prohibiting the sale of liquor and

beer. The proof was that Kettering sold beer by the glass, in a saloon. He was convicted of violating the ordinance, and, on appeal, the judgment of conviction was affirmed in this court. The objection was there urged, that the ordinance was in violation of the constitution, but it was said, in reply, that this question, so far as it relates to retailing of liquor or beer, is not an open question in this court. The objection, however, was further urged, that the ordinance was too broad, inasmuch as it prohibited not only the sale of liquor by retail, but by wholesale, and therefore could not be sustained as a police regulation. The court said: "But this prosecution was for the sale of beer by the glass, in what is called a 'saloon,' and therefore does not involve the question of the power of the city to forbid its sale as an article of commerce, to be carried beyond the limits of the city, or used for mechanical or domestic purposes. Such a case is not before us." Counsel, in argument, speak of this decision as holding this ordinance too broad. This is a misapprehension. The court did not rule one way or the other on that question; and it will, moreover, be noted, that what is said there with reference to "retail" and "wholesale," has reference to such sales as a matter of fact, and not to an arbitrary definition of such sales, as here, drawing a line between those of less than a gallon at a time, and assigning them to one class, and those of one gallon or more at a time, and assigning them to the other class.

In *Strauss* v. *Town of Pontiac,* 40 Ill. 301, section 19, of article 4, of the city charter, authorized the prohibition of tippling houses or dram-shops within the town, or within five miles thereof, and it was held that this did not authorize an ordinance prohibiting sales of beer and liquor, generally. But section 17, of article 7, of the charter, forbade any person from keeping within the town, or within five miles thereof, spirits or beer, for the purpose of traffic, and it was held that this was, in itself, a prohibition of the traffic, and did not need

to be supplemented by an ordinance; and there was the same ruling in *Town of Ashton* v. *Ellsworth*, 48 Ill. 299.

In *Gunnarssohn* v. *City of Sterling*, 92 Ill. 571, the charter empowered the city council "to license, prohibit or regulate," by ordinance, sales of spirituous or malt liquors, etc., "within the city, and within one mile of the city limits north of Rock river." An ordinance was adopted prohibiting sales within the limits prescribed by the charter, of spirituous and malt liquors in less quantities than five gallons. It was contended that this ordinance was invalid, first, because the exclusive power of the city to prohibit the sales of liquor has been taken away by the subsequent enactment of the Dram-shop act; second, that the ordinance is too broad and comprehensive in its terms, and attempts to restrain and prohibit a matter of business or trade to an extent that in nowise affects the police of the city; and third, that the ordinance is inconsistent with the general statutes of the State and the policy of the State legislature, and therefore void. But each of these objections was overruled, and the ordinance was sustained.

It is impossible to draw a line between those cases and the present case, and say, that there the word "prohibit" was effective to the extent there held, but here it must be held to mean sales of less than a gallon at one time, only. If it might be referred, in the *Olney case,* to local option to prohibit sales in quantities of less than one barrel at one time, or, in the *Goddard case* or the *Block case,* to declare all sales a nuisance, no reason is apparent why a different rule should apply here.

Counsel, however, say, that the 48th clause of the same section, of which the clause under consideration is a part, is further confirmative of the construction they contend for. It reads: "And the city council in cities, and president and board of trustees in villages, shall also have the power to forbid and punish the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, to any minor, apprentice or servant, or insane, idiotic or distracted person,

habitual drunkard, or person intoxicated." They say the language here is just as broad and comprehensive as in clause 46, and that it is inconceivable that legislation should be thought necessary to prohibit wholesale dealers from *giving away* their stocks by wholesale. But to give this language effect, as to amounts of one gallon or greater, it is not necessary that we should assume that the legislature supposed there was great probability of owners of large stocks of liquors giving away their entire stocks to persons of the classes designated in this clause,—it is sufficient that the legislature has used general language prohibiting sales and gifts to these classes, and that there is nothing in the subject necessarily creating a presumption that some specific limitation as to quantity sold or given at one time must have been intended. Reading this clause by itself, no one could reasonably come to the conclusion that it was intended to apply to any one specific quantity rather than another, for no quantity is named, and no language is used showing that it was intended that information was to be sought elsewhere, in this respect. If it could have been certainly known that some small specific quantity was intended, then the clause must have either named that quantity or have unmistakably indicated a mode of ascertaining it. The manifest purpose of enacting the clause was to enable cities and villages to prevent the use of liquors, as a beverage, by the designated classes, and to that end they are empowered to prohibit, by ordinance, that liquors shall be either sold or given to them; and since any amount of liquor, whether great or small, sufficient to produce intoxication, is certainly within the danger intended to be guarded against, so, also, any amount of liquors that may be used as a beverage is within both the letter and the spirit of the clause.

But it is contended that the words "selling," or "giving away," in this clause, are defined by the 13th section of the Dram-shop act, and that that definition clearly defines the objects of both laws. Section 13 of the Dram-shop act reads

41—120 ILL.

thus : "The giving away of intoxicating liquors, or other shift or device to evade the provisions of this act, shall be held to be an unlawful selling." Clearly, this has no reference to sales to the helpless classes designed to be protected by the clause referred to ; and it is also quite clear that its sole purpose is to define what shall be deemed a sale under that act. It has no reference to quantities, and none to the powers of cities and villages under the general act applicable to them.

Again, counsel contend that the proviso concerning druggists' permits is limited to sales by retail, and that we have thus decided in *Wright* v. *People*, 101 Ill. 134, and that this being so, it is fairly to be presumed that the balance of the clause was to have no greater scope. Counsel labor under a misapprehension in respect to what we decided, on this subject, in *Wright* v. *People*. The question in that case was, whether a druggist selling in good faith, as such, and without any intention of violating the Criminal Code, but not being, at the time, licensed as a druggist, was liable to indictment and conviction under the second section of the Dram-shop act, and it was held that he was. There was no question as to the scope of the proviso in favor of druggists in clause 46, in section 1, of article 5, of the act in relation to cities, villages and towns. The case involved only a construction of the Dram-shop act, so far as bearing upon the case, and the language referred to only asserts the obvious truth, that if by the term "dram-shop," "the legislature meant any place where liquors are sold in less quantities than a gallon, any well provided drug store as fully answers that description as a tippling house, for all regular druggists are daily, and almost hourly, in the habit of selling liquor in that way." But it neither directly asserts, nor was it intended to convey the idea, that druggists' sales are confined to such amounts. It proves nothing to the purpose of appellant's contention, to establish that the clause under consideration confers power to prohibit sales in quantities less than a gallon,—all concede

that; but, we repeat, the question is, does the power conferred stop there? And hence, unless druggists' sales are always in quantities less than a gallon, it can not be logically urged that the exception in their favor tends to prove that the power of prohibition was intended to be limited to quantities less than a gallon. It surely must be beyond question, that if the business of druggists necessitates that they should sometimes sell liquor in quantities of one gallon, or greater, at one time, to exempt them from the operation of ordinances prohibiting sales generally, in quantities of one gallon or greater, they should be specifically named and excepted.

The recital of the purposes for which druggists may be authorized to sell, namely, "medicinal, mechanical, sacramental and chemical," renders it certain that it must often be necessary for them to sell in quantities of one gallon and more; and if we could have had any doubt in that regard, that doubt would have been removed by statistics furnished in the argument of counsel for appellant. They were produced for another purpose, but we deem them more pertinent for this. Counsel there say: "From testimony given before the United States revenue commission, in 1865, it was established that the sales of one single rectifying house in the city of New York averaged over thirty thousand gallons of alcohol, equivalent to sixty thousand gallons of proof spirit, per annum, for the preparation of hair tonics, eighty thousand gallons of alcohol to one firm for the manufacture of a popular article of cheap perfumery, one hundred and twenty-five thousand gallons to another firm for an imitation wine, and forty-one thousand gallons to a third for a patent pain killer. A single firm in western New York, engaged in the manufacture of a horse medicine, reported a consumption for this purpose of over fifty thousand gallons of proof spirits per annum. * * * The whole quantity of alcohol used in the manufacture of burning fluid in the United States in 1860, was estimated by the United States revenue commission to have been at least

sixteen millions of gallons. 'Some idea of the extent of the
production of this article may be gained from the statement
that the manufacture of burning fluid in 1860, in the city
of Cincinnati alone, required an amount of alcohol equal to
the distillate from twelve thousand bushels of corn for every
twenty-four hours.'"

These are illustrations of the uses of liquors, and the
quantities required for medicinal, mechanical and chemical
purposes, and therefore within the sales that it is here con-
templated may be made by druggists, and it is apparent that
they do not exhaust even the classes under these heads.

Another contention urged by counsel for appellant is, that
the Dram-shop act, in its second section, by implication in-
tends that even the dram-shop keeper, and therefore every
other individual as well, may freely, without fee or charge
therefor, lawfully sell liquor in any quantity greater than a
gallon, only not to be drank upon or adjacent to the seller's
premises. This, in any view, could only be true as to cities
and villages, in the event that the Dram-shop act was the
only law in force in cities, villages, etc., on the subject of li-
censes, which, we have seen, is not the fact. In all the cases
referred to *supra*, there was a general law in force limiting
the amount that could be sold without a license. When the
causes of action in *King et al.* v. *Jacksonville, Goddard* v.
*Jacksonville,* and *Byers et al.* v. *Town of Olney,* accrued, that
amount was one quart—when the cause of action accrued in
all the other cases, the amount was one gallon ; and in neither
one of them was the amount fixed by the general law allowed
to affect the power of licensing, regulating or prohibiting,
under the charters. In the *Olney case,* it was expressly ruled
that an ordinance prohibiting sales in a less quantity than
one barrel was not repugnant to a general law prohibiting a
sale without a license in a less quantity than one quart. The
court said : "But we see no repugnance between the general
law and the ordinance in this case. The general law pro-

hibits a sale without a license in a less quantity than one quart. The ordinance only extends the amount to a barrel, and does not require a license to be procured from the corporation. The subject matter of sale without license has been in part, only, regulated, by forbidding sales in small quantities, and has left the larger sales without regulation by law. The ordinance comes in to regulate sales in larger quantities. I can not see the repugnance to any law of the State, and believe the subject to be within the corporate powers for regulation." And afterwards, in *City of Pekin* v. *Smelzel*, 21 Ill. 464, it was again expressly ruled, that cities, under general powers to license and regulate, etc., may exercise powers by ordinance, regulating the sale of intoxicating drinks, beyond those authorized by the general laws of the State. And there was also like ruling, in effect, in *Pendergast* v. *City of Peru*, 20 Ill. 51.

And finally, it is contended that the eighty-second power in section 1, of article 5, of the act entitled "Cities and Villages," confers power "to direct the location, and regulate the use and construction, of breweries and distilleries * * * within the limits of the city or village," and that this is inconsistent with the notion that by the forty-sixth power prohibition of wholesales without limit was intended. But the fallacy here, as in the argument on the inclusion of the word "prohibit" with the words "to license and regulate," is in assuming that the word "prohibit" must apply to all sales, or only to sales in less quantities than one gallon. But we have seen that it is sufficient to authorize its use in the connection in which it occurs, if it may properly apply to any sales not covered by the Dram-shop act, and that such sales are not only possible, but of frequent occurrence. It is, moreover, clear, that a prohibition, even if the power were to be exercised, need not necessarily be exclusive, because, as we have seen, the exception may be made in favor of druggists, without regard to the quantity to be sold at one time.

A prohibition of all sales of liquors within the municipality for use there as a beverage, without reference to the quantity sold at one time, which, on the authorities we have referred to, is clearly within the police power, it is evident would not affect the manufacture of liquors to be sold to druggists, nor the manufacture of liquors to be sold for exportation and trade without the limits of the municipality. There is therefore no necessary conflict between the provisions.

*Second*—The second objection, by implication, assumes that the license here affects only sales of liquors in large quantities, and as a part of the general commerce of the country, without in any perceptible degree affecting sales facilitating its use as a beverage among the inhabitants of the city, and doubtless originated in an omission to observe and keep in mind the distinction between wholesale in fact, and wholesale as arbitrarily defined and classified by this ordinance. When it is reflected that this license authorizes sales, for the purposes of a beverage, in quantities of one gallon or more when the liquors are carried away in jugs, demijohns, bottles, kegs, etc., and drank at the houses of the purchasers, or elsewhere remote from the premises of the vendors, it must be evident, that if, as all prohibitory laws assume, and as is held by the previous decisions of this court, dram drinking is an evil to the person, and pernicious to the welfare of society, it must be evident that there is, under this license, as well as under license authorizing sales of smaller quantities, a necessity for police supervision, and that as to this license, as well as to that, there may be charged a sum both for the purpose of restricting sales or restricting the persons selling, and compensating the municipality for additional police expenses that may directly or indirectly result from the traffic. The amount charged for the license is not a tax, but a burden imposed as the price of a privilege, which those controlling the municipality were at liberty to restrict as they pleased, or to deny altogether. (*People* v. *Thurber*, 13 Ill. 554; *East*

*St. Louis* v. *Wehrung,* 46 id. 392; *East St. Louis* v. *Trustees,* 102 id. 489.) There can therefore be no question of adequacy or excessiveness of the amount charged. See, also, *Tenny* v. *Lenz,* 16 Wis. 566, and *State* v. *Cassidy,* 22 Minn. 312. As was said in *Schwuchow* v. *City of Chicago,* 68 Ill. 449 : "This business is, in principle, within the police power of the State, and restrictions which may rightfully be imposed upon it might be obnoxious as an illegal restraint of trade when applied to other pursuits."

But if the question were before us, it would be impossible to say that the amount here charged ($250 per annum) is excessive. How can it be certainly known that the additional expense to the police of the city, in consequence of sales here licensed, can not be equal to the amounts thus to be derived from licenses? In *Distilling Co.* v. *Chicago,* 112 Ill. 19, we held, twice this sum not an unreasonable amount to be exacted for a license for a distillery. It is true, in the clause authorizing that license, the word "tax," as well as the word "license," is used, while here the word "license," only, is used; but that is of no significance, since we held that the sum there charged was authorized under the licensing power, and not under the taxing power. It is impossible that in such matters there can be any accurate adaption of charges to expenses. A general, reasonable approximation, must, in the nature of things, be sufficient. See *Ash* v. *People,* 11 Mich. 347.

The ruling below meets with our approval in all respects, and the judgment must therefore be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CRAIG : I am not satisfied with the construction placed upon the act of the legislature under which the ordinance was passed. I do not think the legislature intended to authorize the city to impose a license upon wholesale dealers.