## Herman Strauss v. City of Galesburg.

1. LICENSE—*Right of Cities to License Wholesale Liquor Dealers.*—Cities of this State have the right to impose a license upon wholesale liquor dealers.

2. TAXATION—*Discrimination—Ordinances Classifying Liquor Dealers into Two Classes.*—Where an ordinance classifies liquor dealers into two classes and its effect is to operate uniformly upon all persons desiring to come into either class, there is no discrimination; the rule of uniformity in taxation is not violated so long as the tax imposed is the same upon all the members of the particular class.

Assumpsit, for money paid under compulsion. Appeal from the Circuit Court of Knox County; the Hon. GEORGE W. THOMPSON, Judge, presiding. Heard in this court at the April term, 1900. Affirmed. Opinion filed June 8, 1900.

C. C. CRAIG, attorney for appellant.

ADDISON J. BOUTELLE, attorney for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellant to recover a license fee paid by him as a wholesale liquor dealer to appellee under an ordinance of the latter.

The case was tried upon a stipulation of facts by which it was agreed, among other things, that on July 17, 1899, the city council of the city of Galesburg passed an ordi-

nance amending chapter 30 of the revised ordinances of the city relating to dram-shops. Section 1 of said chapter, as amended, prohibited the sale of intoxicating malt, vinous, mixed or fermented liquor in any quantity, in the city, without a license, and licenses to sell the same were classified as follows:

"First, licenses to wholesale dealers, which shall only permit the sale, offer to sell or giving away of such liquors in quantities of one gallon or more, not to be drank upon the premises or in or upon the adjacent room, building, yard, premises or place of public resort."

The location of such wholesale establishments was also restricted to certain districts.

"Second, licenses to keep a dram-shop, which shall permit the keeping of a dram-shop and the sale of said liquors in any quantity thereat, subject to the provisions of this ordinance and all ordinances of this city in regard to dram-shops, and the sale, offering for sale or giving away of such liquors."

And then followed the provisions for penalties to be inflicted upon persons violating the ordinance. The only other change made in said chapter than the amendment of section 1 by the new ordinance was the addition of a section known as section 20, as follows:

"Sec. 20. Licenses to wholesale dealers to sell in quantities of one gallon or more, as specified in section 1 of this ordinance, shall be issued only upon application to the city council in writing, stating the time for which said license is desired, the place where it is intended to locate such wholesale business (which application shall be subject to the approval of the council) and the payment in advance into the city treasury of the sum of $500 per annum," etc.

Section 3 of said chapter No. 30 provided for the issuing of dram-shop licenses for the sum of $1,000 per annum. It was further agreed that plaintiff was, prior to the passage of said ordinance, engaged in the sale of intoxicating liquors in quantities of one gallon or more, not to be drank upon the premises where sold; that on August 7, 1899, after the passage of said ordinance, he sold intoxicating liquors in quantities of one gallon or more, not to be drank upon the premises, and was arrested for the violation of said ordi-

nance, and while under arrest paid the sum of $364.40 balance on license fee required by said ordinance for the remainder of the year, under protest, and took out a license as a wholesale dealer; that the only question in issue is the validity of said ordinance, and that if said ordinance is valid there should be a judgment for the defendant for costs, and if not, a judgment should be rendered against the defendant for the sum of $364.40 and costs of suit. The stipulation also provided for waiving a jury, and the case was tried before the court, which found said ordinance to be valid and entered judgment against appellant for costs, from which he appeals to this court.

It is urged that the ordinance was invalid because it discriminates in favor of dram-shop keepers and against wholesale dealers. By the stipulation all questions other than the validity of the ordinance requiring wholesale dealers to take out a license is obviated, and if the ordinance is valid in that respect, the judgment of the court below must stand.

As we view it, the ordinance provides for a certain license to be paid by wholesale dealers, giving them the right to sell liquors in quantities of one gallon or more, and a certain other and larger license to be paid by those who wish to both wholesale and retail liquors at the same place. That cities of this State have the right to impose a license upon wholesale dealers was decided in the case of Dennehy v. Chicago, 120 Ill. 627.

The ordinance in question classifies liquor dealers into two classes and its effect is to operate uniformly upon all persons desiring to come into either class. Under such conditions there can be no discrimination. In the case of Timm v. Harrison, 109 Ill. 593, it was said:

"There may be different classes and varieties included under the general description, 'liquor dealers,' and we think it competent for the General Assembly to classify the different kinds of liquor dealers included in the general description as used in the constitution, and impose differential taxes upon such classes; that the rule of uniformity in taxation would not be violated so long as the tax imposed is the same upon all the members of the particular class."

There can, then, be no objection to dividing liquor dealers into classes which may be required to pay different rates of license, provided the tax imposed is the same upon all members of the particular class.   Appellant relies to a large extent upon City of Cairo v. Feuchter, 159 Ill. 155, and City of Monmouth v. Popel, 183 Ill. 634, to sustain his position that the ordinance in question is void.   In the former case the ordinance related entirely to the sale of liquor in quantities of five gallons and upward, and provided that persons so dealing in the same should be deemed wholesale liquor dealers and pay a license fee of $100 a year.   The ordinance, however, contained a provision that it should not apply to any person or persons who should hold a valid license in force, issued under the provisions of a certain other ordinance, for the sale of liquors in less quantities than one gallon.   The court held that as the ordinance exempted a certain class of persons from its operation, viz., those who had a license to sell liquors in less quantities than one gallon, it was unjust and unreasonable, as " this exempted class could engage in the business of a ' wholesale liquor dealer' without having first obtained a license therefor from the city, and without becoming liable to a fine, while other persons engaging in the same business without first obtaining a license therefor, from the city, would be subject to a fine."   It was also said therein by the court that the effect of the two ordinances when considered together was not to limit the right of the dram-shop keeper to sell at wholesale to the same place designated in his license as a dram-shop keeper, but that he was simply exempt from the requirements of the new ordinance and could engage in the business of selling liquors at wholesale at any place in the city without a license.

In the case of City of Monmouth v. Popel, *supra*, the ordinance provided that " whoever, not having a license to keep a dramshop, or druggist permit, shall by himself or another, either as principal, agent, servant, clerk or otherwise, directly or indirectly, sell or give away, in any quantity, to any person, any intoxicating, malt, vinous, mixed or fer-

mented liquors, shall for each and every offense be fined,"
etc.

In passing upon this ordinance the Supreme Court held
that it did not confine all dealing in liquor in Monmouth
to places where dram-shops were located, but on the con-
trary the ordinance did not in any way fix any limits or
boundaries as to the place where the sales in quantities of
one gallon or more might be made; that it did not provide
that sales in quantities of one gallon or more, made by the
dram-shop keeper, should be made on the premises where
his dram-shop was located. The court also held that the
ordinance .discriminated unjustly in favor of dram-shop
keepers and holders of druggists' permits, and was therefor
invalid.

The ordinance in question here is not subject to the objec-
tions raised to the ordinances of Cairo and Monmouth in the
cases above referred to. It excepts no one from the pay-
ment of license but simply provides for the division of
liquor dealers into classes. It provides that those who sell
at wholesale shall pay $500 per annum, while those who
sell at wholesale and retail both, having the greater privi-
lege, shall pay $1,000 per annum. This certainly gives the
dealer who sells at wholesale and retail both, no undue
advantage over the wholesale dealer, as it requires of the
former the payment of $500 additional for the privilege
of selling at retail.

The ordinance also provides for the granting of "license
to keep a dram-shop which shall permit the keeping of a
dram-shop and the sale of liquors in any quantity thereat."
We interpret this to mean that the person holding such a
license shall have the right to maintain only one establish-
ment in the city for the sale of liquor thereunder, and it is
therefore not obnoxious to the objections made to the ordi-
nance above referred to, that the right of the dram-shop
keeper to sell at wholesale, was not limited to the same place
where his dram-shop was located.

We know of no reason why the ordinance of the city of
Galesburg, in question here, should not be held valid, and
the judgment of the court below is therefore affirmed.