SOLOMON BLOCK

*v.*

THE PRESIDENT AND TRUSTEES OF THE TOWN OF JACK-
SONVILLE.

36   301
120   638
120   640

1.  TOWN ORDINANCES—*proof of their adoption.*   Under the charter of the town of Jacksonville, the production of a newspaper, published in the town, containing what appears as an ordinance of the town, which is headed " Published by authority," and the ordinance purports to be signed by the president of the board, and countersigned by the town clerk, proves a sufficient adoption and authentication of the ordinance.

2.  TOWN OF JACKSONVILLE—*its powers.*   The president and trustees of the town of Jacksonville have the power to declare the sale of intoxicating liquors in the corporate limits, a nuisance.

3.  TOWN CHARTER.   The general law has conferred exclusive power upon the president and trustees of incorporated towns, within their corporate limits, to grant licenses to sell such liquors.   And the charter of the town of Jacksonville confers the exclusive power to grant or refuse such licenses; to restrain, prohibit and suppress tippling houses and dram shops.   And when they grant or refuse licenses, it is under the authority of legislative enactment.

4.  INTERNAL REVENUE LICENSE—*its effects.*   A license granted under the internal revenue laws of the United States, confers no power to exercise a trade, business or calling, but it was only to tax the exercise of the trade, or occupation, authorized by the State authorities.   Nor has Congress power to authorize the exercise of a business prohibited by the laws of a State, in the regulation of its general police.   And the general laws of the State do prohibit the sale of spirituous liquors without a license.

5.  A license under the revenue laws of the United States confers no power, but protects the party holding it.   The party must look to the State laws for authority to sell intoxicating drinks.

APPEAL from the Circuit Court of Morgan county; the Hon. DAVID M. WOODSON, Judge, presiding.

This was a suit, brought before a justice of the peace, by the president and trustees of the town of Jacksonville, against Solomon Block, for selling spirituous liquors without a license, in violation of an ordinance of the town.   The case was tried before the justice of the peace, and resulted in a judgment against Block for the sum of one hundred dollars, from which he appealed to the Circuit Court.

On the trial, in the court below, plaintiffs introduced in evidence a newspaper purporting to have been printed in Jacksonville. A witness testified, that what purported in the newspaper to be a copy of the ordinance, claimed to have been violated, was a copy of the ordinance adopted by the trustees of the town. Defendant objected to the admission of the paper in evidence, but the court overruled the objection, and defendant excepted.

Plaintiffs then proved that defendant sold one sealed bottle of intoxicating liquor in the town, at about the time charged in the complaint.

The defendant then offered to prove that he was a wholesale and retail dealer in liquors, in the town of Jacksonville, but sold no liquor to be drank upon his premises, nor suffered any to be so drank; that he kept a quiet, respectable, orderly house; created no nuisance, and had no noise or disturbance about his premises. The court rejected this evidence, to which defendant excepted. Defendant then offered in evidence a license, issued to him by the proper officer of the United States government, authorizing him to sell liquors at wholesale and retail in Jacksonville, during the time it was proved he had sold the liquor. But the court rejected this evidence, to which defendant excepted. He also offered to prove that he was an importer of liquors, and that the sealed bottle so sold, was an original package, in the same condition as when imported.

The jury returned a verdict in favor of plaintiffs, and the debt was found to be twenty-five dollars; defendant entered a motion for a new trial, which was overruled by the court, and judgment rendered upon the verdict in favor of the plaintiffs. Defendant prayed an appeal, and brings the case to this court, and assigns all of these various rulings of the court below as errors, and asks a reversal of the judgment.

Mr. M. McCONNEL, for the Appellant.

Mr. WILLIAM BROWN, for the Appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is first insisted, that the court erred in admitting the newspaper publication of the ordinance, under which the recovery was sought. Whether the existence and validity of the ordinance was sufficiently proved, depends upon the provisions of the charter of the town of Jacksonville. The twenty-sixth section of the charter (Private Laws 1849, p. 128,) declares, that all ordinances passed by the board, shall be published in some newspaper, published in the town, and shall not be in force until so published. And that such ordinance shall be sufficiently proved in any court, by producing a copy of the same, certified by the clerk of the corporation, or a printed copy taken from the newspaper, or the printed pamphlet in which the same had been published, provided the same purports to have been done by authority of the corporation. The printed copy read in evidence from the newspaper, has this caption, "Published by authority of the corporation," and the ordinance purports to have been signed by the president of the board, and countersigned by the clerk. We think such a caption, attested by the signatures of these officers, fulfills the requirements of the statute. Had the law makers designed to require more satisfactory proof of these facts, other and different requirements would have been imposed. We think this purported to be a publication, by authority of the corporation, and rendered it admissible in evidence, under the charter.

The second and fourth assignment of errors, question the authority of the corporate authorities of the town, under their charter, to declare the sale of intoxicating drinks a nuisance. In considering that question, we feel constrained to hold, that the authority has been held, by previous decisions of this court, to exist. *Goddard* v. *The Town of Jacksonville*, 15 Ill. 588; *Byers* v. *The Trustees of Olney*, 16 Ill. 35; *Trustees of Jacksonville* v. *Holland*, 19 Ill. 271; *The City of Pekin* v. *Smelzel*, 21 Ill. 464. These decisions are either made under this, or charters having similar provisions authorizing them to suppress the

sale of intoxicating drinks.  These cases, running through so long a period, and never having been modified, we regard as establishing the right, whatever might be our views, were the question before us for the first time for determination.  And we feel compelled to adhere to the construction there adopted.

Do the third and fourth clauses of the sixty-fourth section of the act of Congress, relating to direct and excise taxes, adopted in 1862, confer power under the license there authorized to be issued, to sell liquors?  These clauses of that section require both retail and wholesale dealers in intoxicating liquors to obtain a license, but do not in terms authorize the sale contrary to the laws of the State.  And the sixty-seventh section of the act declares, that no such license, when granted, shall be construed to authorize the commencement or continuance of the trade, business, occupation or employment named, within any State or territory in which it is or shall be specially prohibited by the laws thereof, or in violation of the laws of any State or territory.  It is obvious, from this latter provision, that it was not the design that such a license should confer the power, but only to tax the exercise of the trade or occupation, which was authorized or regulated by State authority.  The general government, very properly, recognizes the power of the State government to regulate their internal police, but when the State has conferred the authority to sell liquors, then the general government claims the right to tax the exercise of the business thus authorized.

When the State, in the exercise of an undoubted power, has, however, prohibited a business, Congress disclaims all intention to confer the right to authorize the exercise of such prohibited business, in opposition to the State laws.  But when the sale of intoxicating liquors is not prohibited by State authority, the general government then claims the right to impose this revenue tax upon the exercise of the occupation.  Otherwise there would necessarily be a conflict in the jurisdiction of the two governments, that would lead to confusion, if not to conflict of jurisdiction.  Such power has never, since the organization of the government, been claimed or exercised.  It has been

admitted in the past by statesmen of every class, as well as all eminent jurists, that each State has the sole power of regulating their own internal police; to define and punish crime; to declare and enforce the rights of their citizens; and to establish the relations, and prescribe the duties of their citizens.   It has never been supposed that Congress could interfere with or exercise such a power.   And to hold that Congress could license citizens of a State to violate its laws, would be an invasion of the constitutional power of the State, that would be subversive of our republican form of government.

It is, however, insisted, that the laws of this State do not prohibit the sale of intoxicating liquors.   We think this position is untenable.   The general law of the State prohibits all persons from selling such liquors without first obtaining a license for the purpose, and provides the mode in which such license may be obtained.   (Scates' Comp. 831.)   It also provides, that the body to whom application is made, may either reject or grant the same.   The law also confers upon the corporate authorities of towns, the exclusive privilege of granting such license, within their corporate limits.   And the charter of Jacksonville, in express terms, empowers them to restrain, prohibit and suppress tippling houses and dram shops, and to license, tax and regulate groceries.   Having conferred upon them this power, they, under the general law, as under their charter, have the right to grant or refuse to license the sale of intoxicating liquors.   The general law has conferred the power on the County Court to grant such licenses in the county, and upon the president and trustees of incorporated towns the exclusive privilege within the limits of the incorporation.   The legislature has then designated the town authorities as the persons to exercise the power in one case, and the county authorities in the other.   And when refused or granted by either, the power is exercised entirely under the State law.   The president and trustees are made the officers of the general law, to the extent of their jurisdiction, precisely as are the County Courts. In either case, the granting or refusing a license, is by express authority of the general law regulating that business.   And a

sale without obtaining a license from the president and trustees by a citizen, within its limits, is prohibited precisely in the same manner, and by the same authority, as a sale of liquor beyond the corporate limits and within the county, without obtaining a license from the county authorities.

Under this act of Congress, the revenue officer will not hesitate to grant such a license, to any person who may apply, and pay for the same, leaving him to conform his actions to the requirements of the municipal regulations of the State. He will not undertake to determine whether the applicant has the right, under the laws of the State, to exercise the business of selling intoxicating liquors. His license confers no power, but protects the applicant from a penalty for failing to comply with the requirements of the law of Congress. This is the scope of the act of Congress, and the party, to justify his action, can alone look to the laws of his State.

We are not able to find in this record, that any exception was taken to the judgment of the court below, in overruling the motion to quash the proceeding, or to grant a new trial. To authorize this court to review such decisions, exceptions should not only have been taken, but preserved in the record.

We are, after a careful examination of this record, unable to perceive any error requiring the reversal of the judgment of the court below, and it must, therefore, be affirmed.

*Judgment affirmed.*