## DOUGLAS STREETER

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. INTOXICATING LIQUORS—*statute relating to, construed.* The sixth section of the act of 1872, relating to intoxicating liquors, which provides that every person guilty of violating the "first and second sections," shall forfeit, etc., does not require the violation of *both* sections before a party can be subjected to the punishment provided, but the penalties named are for the violation of *either* the first or second section.

2. SAME—*third sec. of act of 1872 does not authorize the destruction of private property.* The third section of the act of 1872 does not authorize the summary destruction of private property. It simply declares all places where intoxicating liquors are sold in violation of the act, common nuisances, and provides that they may be shut up, and the traffic carried on therein abated.

3. SAME—*constitutional power to abate nuisances in respect to.* Under what is called the police power, the legislature has the right to authorize the abatement of a public nuisance; and the carrying on of an illegal traffic in intoxicating liquors, and the assembling of idle and vicious persons for that purpose, is a nuisance, and may be so declared, and abated according to law.

4. SAME—*whether act of 1872 is in violation of the constitutional provision prohibiting the granting of special or exclusive privileges, etc.* If, at the time of the passage of the liquor law of 1872, there was no law under which a person not residing in an incorporated town or city could obtain a license, it does not follow that the act, for that reason, contravenes

the constitutional provision which prohibits the passage of *local* or *special* laws granting to any corporation or individual any special or exclusive privilege, etc., as the act is a general law, operating equally upon all classes of persons within the State.

5. CONSTITUTIONAL LAW—*statute, whether special or general.* A statute that applies to and confers the same general powers on all incorporated towns and cities in the State, is not necessarily a special law, and is not inhibited by any provision of the constitution against special legislation.

6. A statute, general in its operation, to confine the power to license the sale of intoxicating liquors to incorporated towns and cities, where the police force is more efficiently organized, and can better control it, will not be, it seems, an unauthorized exercise of the police power of the State in providing against the evils resulting from the traffic in such liquors.

7. FOREIGN STATUTE—*construction.* Where a statute of another State is substantially adopted, it will be presumed that the construction previously given to it by the courts of the State from which it is taken, is also adopted, unless such construction is inconsistent with the spirit and policy of our own laws.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. J. C. CHAMPLIN, and Mr. E. W. DEWEY, for the appellant.

Mr. JAMES K. EDSALL, Attorney General, Mr. H. K. BOYLE, and Mr. T. S. BOWEN, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was a prosecution commenced before a justice of the peace, against appellant, for selling intoxicating liquors without a license. The justice found him guilty, and assessed a fine of $20 against him, and rendered judgment accordingly. On an appeal taken to the circuit court, the cause was submitted on an agreed state of facts, and the court, *pro forma,* found appellant guilty, and entered a judgment against him of $20 and costs of suit.

From the statement of facts, it appears appellant resides near the city of Ottawa, in LaSalle county, but not within

the limits of any incorporated town or city; that he has never given the requisite bond and obtained a license to keep a grocery, as required by the first section of an act entitled "An act to provide against the evils resulting from the sale of intoxicating liquors in the State of Illinois," approved January 13, 1872, and at his residence, as stated, he has repeatedly sold intoxicating liquors in a less quantity than one quart, to any person who desired to purchase, to be drank on his premises by the glass, and the liquors so sold were drank by the persons purchasing, on his premises, by his permission.

It is provided in the first section of the act under which this prosecution was commenced, it shall be unlawful for any person, not having obtained a license to keep a grocery, to sell, in any quantity, intoxicating liquors, to be drank on the premises where sold, or in any adjoining room, or any place of public resort connected therewith, and no person shall be granted a license without first giving a bond to the municipality or authority authorized by law to grant licenses, in the penal sum of $3000, with two sufficient securities, which bond shall be conditioned and for the purposes as therein directed.

The second section provides, it shall be unlawful for any person to sell intoxicating liquors to minors, unless upon the written authority of their parents or guardians, or family physician, or to persons intoxicated, or who are in the habit of getting intoxicated.

In the third section it is provided, all places wherein intoxicating liquors are sold in violation of the act, shall be taken, held and declared to be common nuisances, and all such places shall be shut up and abated on the conviction of the keeper thereof.

The sixth section declares what penalties shall be inflicted on the persons violating the provisions of the first and second sections of the act.

The admitted facts show a clear violation of the first section of the statute, but not of the second.

It is insisted, a conviction can not be maintained unless the evidence shows a violation of the *first* and *second* sections. The objection seems hypercritical.   It is founded on the peculiar phraseology of the sixth section, which imposes the penalties, and which provides that every person guilty of violating the provisions of the "first and second sections," shall forfeit and pay certain penalties.   The penalties imposed by that section are for the violation of either section, and it is not indispensable a party should be guilty of a violation of both before he can be subjected to the forfeitures enumerated. This is the obvious meaning of the words used, and is the construction given to the same language in the statute of Ohio on the same subject, in *Miller* v. *The State*, 3 Ohio, 475. Our statute, in many respects, is a substantial, and, in other parts, a literal transcript of the Ohio law, and it is a rule that, when the legislature adopts substantially the statute of another State, it is presumed to adopt also the construction previously given it by the courts of that State, unless such construction is inconsistent with the spirit and policy of our laws.   *Rigg et al.* v. *Wilton et al.* 13 Ill. 15 ; *Campbell* v. *Quinlin*, 3 Scam. 288.

It is urged, the clause of the third section, which declares all places where intoxicating liquors are sold in violation of the act, to be common nuisances, and shall be shut up and abated, authorizes the destruction of private property, and therefore contravenes constitutional law.

The construction of this section is not involved directly in the decision of this case.   Counsel, however, are in error in supposing it authorizes the summary destruction of private property.   It authorizes no such thing.   It simply declares all places where intoxicating liquors are sold in violation of the act, common nuisances, and provides they may be shut up, and the illegal traffic carried on there abated.   The object is, to prevent the assembling of idle and evil disposed persons for the purpose of violating the laws of the State.

Under what is called the police power, the legislature has the right to authorize the abatement of a public nuisance; and the carrying on of an illegal traffic in intoxicating liquors, and the assembling of idle and vicious persons for that purpose, is a nuisance, and may be so declared, and abated according to law. *Black* v. *The Town of Jacksonville,* 36 Ill. 301, and cases cited.

There is nothing in this clause of the third section that we are aware of that contravenes any provision of our constitution. The same construction has been given to a like provision in the Ohio statute, in *Miller* v. *The State, supra.*

The point which seems to be relied on with the most confidence, is, the act is in conflict with that clause of the 22d section of the fourth article of the constitution of 1870, which prohibits the passage of local or special laws "granting to any corporation or individual any special or exclusive privilege, immunity or franchise whatever."

The reason assigned is, the act of 1853, which purports to re-enact the laws which had been repealed by the act of 1851, that authorized county authorities to grant licenses to keep a grocery, was never legally enacted according to the forms prescribed in the constitution of 1848, and there was therefore no law in force at the passage of the act of 1872, authorizing the granting of licenses, other than the charters of incorporated towns and cities, and hence it is said, a person residing outside of the limits of such municipal corporations could not obtain a license, and for that reason the law operates unequally on the citizen, and is void.

It is not perceived how this question can arise in this case. There is a statute that invests the county authorities with a discretionary power to grant licenses to keep a grocery anywhere in the county except in towns and cities that, under their charters, have the exclusive privilege, which has been in existence since 1845, exclusive of the interval between the passage of the acts of 1851 and 1853.

Appellant does not claim he ever applied to the authorities empowered by law to grant licenses, for a license for himself. Had the application been made, and a license denied on the ground there was no law that would authorize it, then the question raised would be presented for decision.

We are, however, of opinion the validity of the present law is not affected by the question whether the act of 1853, which purports to re-enact the laws repealed by the law of 1851, was legally enacted according to the forms of the constitution, and it is not necessary to express an opinion in regard to it. If it is, in fact, true, at the date of the passage of the act of 1872 there was no law under which a person residing outside the limits of incorporated towns and cities could obtain a license to keep a grocery, it does not follow the law, for that reason, is unconstitutional.

The act we are considering, in nearly all its provisions, is general, and operates equally upon all classes of citizens within the limits of the State. The first section prohibits all persons from selling intoxicating liquors, who have not first obtained a license as therein provided. Appellant is within this general prohibition. The second section prohibits the sale of such liquors to minors without the written consent of the parents, guardian or family physician, and contains an absolute restriction upon all persons, either with or without a license, from selling to persons intoxicated, or who are in the habit of getting intoxicated.

If it be conceded the power to grant a license to keep a grocery is confined to incorporated towns and cities which, by their charters, have the right to do so, is the law, for that reason, unconstitutional? We think not. Confessedly the sale of intoxicating liquors, to be drank as a beverage, is a fruitful source of crime in our midst, and the cause of much individual suffering. If such are its fruits when hedged about with penal statutes intended to control it, manifestly the unrestrained traffic would be prolific of results that could not be otherwise than detrimental to the best interests of society.

It may be the best mode to effectuate the beneficent object the legislature had in view in the passage of the law, viz: to provide against the evils resulting from the sale of intoxicating liquors, to confine the power to license the sale to incorporated towns and cities, where it is supposed the police force is more efficiently organized, and can better control it. It concerns the public morals, good order and the welfare of society, and we are not prepared to hold that it is an unauthorized exercise of the police power of the State to so provide.

A law that applies to and confers the same general powers on all incorporated towns and cities in the State is not necessarily a special law, and is not inhibited by any provision of the constitution against special legislation. *Wilkin* v. *Pollar et al.* 18 Ohio, 85.

Being of opinion the law under which the prosecution was commenced is not in conflict with the constitution of the State, the judgment of the circuit court must be affirmed.

*Judgment affirmed.*