(7 App. Div. 553)

PEOPLE v. LYTLE.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

1. SPECIAL DISTRICT ATTORNEY—POWER TO APPOINT—REPEAL OF STATUTE.
    1 Rev. St. p. 364, § 90 (contained in part 1, c. 12, relating to counties and certain county officers), provides that in case of the absence of the district attorney the court may appoint a special district attorney. Laws 1883, c. 123, which was made a part of said chapter 12, amends section 90 so as to provide that whenever the district attorney and his assistant shall not be in attendance at a term of court, or shall be disqualified, the court may appoint a special district attorney to act during his absence, etc. Laws 1892, c. 686 (County Law), repeals said chapter 12, but the schedule of laws repealed does not mention the act of 1883. The revisers, in reporting the county law to the legislature, proposed various amendments to the Codes, for the purpose of including therein all provisions in the General Laws revised which relate to civil and criminal proceedings, among which was an amendment to the Code of Criminal Procedure containing the provisions of 1 Rev. St. p. 364, § 90, as amended by Laws 1883, c. 123. Following the proposed Code amendments was a schedule of laws repealed, which included the act of 1883. The county law took effect May 12, 1892, but the proposed Code amendments, which were intended to take effect October 1, 1892, were not enacted. *Held,* that it was not intended to repeal the act of 1883 by the schedule annexed to the county law, but that that act was reserved for repeal by the enactment of the proposed amendments of the Code of Criminal Procedure, and therefore the court still has power to appoint a special district attorney, in case of the absence or disqualification of the district attorney. Hardin, P. J., and Follett, J., dissenting.

**2. SAME—WHEN APPOINTMENT WILL BE MADE.**

Laws 1883, c. 123, providing that whenever "the district attorney of any county and his assistant, if he has one, shall not be in attendance at a term of any court of record which he is by law required to attend, or shall be unable by sickness or by being disqualified from acting in a particular case, to discharge his duties at such term, the court may * * * appoint some attorney at law * * * to act as special district attorney during the absence, inability or disqualification of the district attorney and his assistant," authorizes the court to appoint a special district attorney, where the district attorney is unable to attend court, though the assistant district attorney is present.

**3. INDICTMENT—VALIDITY—APPOINTMENT OF SPECIAL DISTRICT ATTORNEY.**

Under Code Cr. Proc. § 684, providing that no departure from the form prescribed in respect to any proceeding, nor any error or mistake therein, renders it invalid, unless defendant is actually prejudiced thereby, an indictment is not invalidated by the unauthorized appointment of a special district attorney, who took charge of the matters before the grand jury, where it does not appear that such special district attorney was present with the grand jury during the expression of their opinion or the giving of their votes on any matter. Per Hardin, P. J. Follett, J., dissenting.

**4. SPECIAL DISTRICT ATTORNEY—APPOINTMENT—INHERENT POWER OF COURT.**

The court of oyer and terminer has no inherent power to appoint a special district attorney in case of the absence of the district attorney. Per Follett, J.

Appeal from court of sessions, Monroe county.

Frank Lytle was convicted of burglary in the third degree, and from the judgment of conviction, and from an order denying a motion to set aside the indictment, and from an order denying a motion for a new trial, made pursuant to Code Cr. Proc. 465, he appeals. Affirmed.

The indictment was signed by Daniel W. Forsyth, "Special District Attorney of the County of Monroe. Howard H. Widener, Assistant District Attorney"; and it was indorsed, viz.: "Monroe Oyer and Terminer. The People v. James Franklin and Frank Lytle. Indictment for Burglary Third Degree, Larceny, and Receiving Stolen Goods. George D. Forsyth. District Attorney. A True Bill. (Thompson G. Jones. Foreman. Filed the 18th day of March, 1895. Sent to the Sessions the 18th day of March, 1895." In the sessions the defendant made an affidavit upon which the motion to dismiss the indictment was made. The affidavit contains the following language: "I further say, upon information and belief, that while the grand jury of said county which did find said indictment had the charge embraced in said indictment under consideration, and were receiving evidence concerning the same, one Daniel W. Forsyth was present in said grand jury room, in the hearing of said grand jury, and, as I am informed and believe, did examine witnesses in relation to said charge before said grand jury, and took part in the framing of said indictment, and signed the same as special district attorney of the county of Monroe, under an alleged appointment made by Hon. William H. Adams, justice of the supreme court. I further say that the said Daniel W. Forsyth is not the district attorney for Monroe county, nor is he either of the assistants to the district attorney, nor even a clerk in the district attorney's office; that he was not a member of the grand jury, was not a witness before the grand jury; and that his only right to be present in said grand jury room was derived under said alleged appointment as special district attorney, which appointment, I am informed and believe, was illegal and void, in that the said Hon. William H. Adams had no authority to make such appointment, under the circumstances hereinafter set forth." The affidavit further states: "I further say, upon information and belief, that while said grand jury were in session, and while it had under consideration the charges embraced in said indictment, both the said assistant district attorneys of said county and said clerk, Fred C. Hanford, were in the city of Rochester, and were in and about the district attor-

ney's office during said time, attending to the duties and affairs of said office, and none of them were incapacitated for any reason from assuming the charge and management of the business pending before said grand jury, and to present to said grand jury the charges against me." The affidavit does not state that any officer or other person was present with the grand jury "during the expression of their opinions or the giving of their votes upon any matter." The other facts are correctly stated in the opinion prepared by Mr. Justice FOLLETT.

Argued before HARDIN, P. J., and FOLLETT, WARD, and GREEN, JJ.

George M. Williams, for appellant.

George D. Forsyth, Dist. Atty., and Fred C. Hanford, for the People.

GREEN, J. March 18, 1895, when the charge against defendant was being investigated by the grand jury, and when the indictment was found in Monroe county, the duly-qualified district attorney of that county was absent from the state. He had two assistant district attorneys and a managing clerk, duly and legally appointed, qualified, and acting as such, all of whom were in attendance at the term of oyer and terminer where the indictment was found, discharging their respective duties as such assistants and clerk. An application was duly made to the court at that term for the appointment of a special district attorney, by reason of the illness and consequent absence from the state of the duly-qualified district attorney. Thereupon an order was duly made by that court appointing an attorney and counselor at law, residing in and practicing his profession in the county of Monroe, as special district attorney during the absence of the district attorney. The defendant claims that this order of the court was unauthorized, and that the person so appointed had no power thereunder to perform the duties of the district attorney, and that his appearance before the grand jury during the investigation of the charge against this defendant was unauthorized, and that the defendant has not been lawfully indicted, and that, therefore, the judgment and orders appealed from should be reversed.

Chapter 12 of part 1 of the Revised Statutes (volume 1, p. 364) treats "Of the Powers, Duties and Privileges of Counties and of Certain County Officers." Article 7 of title 2 of that chapter is entitled "Of District Attorneys." By section 90 (page 383) it is provided that:

"When any district attorney shall fail to attend any of the courts above specified, it shall be the duty of such court to appoint some proper person, being an attorney or counsellor at law, to transact the business of the district attorney during the sitting of the court; and the person so appointed shall be entitled to the same compensation for the services he shall perform that the district attorney would have been entitled to for the like services, and his account shall be audited and paid in the same manner."

By chapter 470, Laws 1847, entitled "An act to amend the act entitled 'An act in relation to the judiciary,'" passed in the same year, it was provided, in section 33, as follows:

"When the office of district attorney of any county shall be vacant at the term of any court of oyer and terminer or court of sessions of any county,

or the district attorney shall for any cause be unable to attend the term of any such court, the members of the court, except the justice of the supreme court, may designate some suitable person to act as district attorney at such term of the court; and the person so designated shall have and exercise the same powers and discharge the same duties as district attorneys elected in the manner provided by law, and shall be entitled to such compensation, to be paid out of the treasury of the county. as the board of supervisors shall allow.".

No repealing clause is contained in this statute.

By chapter 123, Laws 1883, entitled "An act to amend section ninety of article seven, title two, chapter twelve, part one, of the Revised Statutes, in relation to the appointment of special district attorneys in certain cases," section 90 "is amended so as to read as follows:"

·"Whenever there is a vacancy, or the district attorney of any county and his assistant, if he has one, shall not be in attendance at a term of any court of record, which he is by law required to attend, or shall be unable by sickness or by being disqualified from acting in a particular case, to discharge his duties at any such term, the court may, by an order entered in its minutes, appoint some attorney at law, residing in the county, to act as special district attorney during the absence, inability or disqualification of the district attorney and his assistant; but such appointment shall not be made for a period beyond the adjournment of the term at which made. The special district attorney so appointed shall possess the powers and discharge the duties of the district attorney during the period for which he shall be appointed. The board of supervisors of the county shall pay the necessary disbursements of, and a reasonable compensation for the services of, the person so appointed and acting."

Thereupon, by the same act, section 33 of the Laws of 1847, above quoted, was repealed; but its provisions were, to an extent, substantially re-enacted, with other provisions added, and the whole was incorporated into and made a part of the Revised Statutes. Section 90, as originally enacted, was thereby abrogated, and the provisions of the act of 1883 were substituted in its place and stead, by express legislative enactment. Consequently, the act of 1883 was embodied into and became a constituent part of chapter 12 of part 1 of the Revised Statutes. At this time the greater part of the judiciary act of 1847 had been repealed. Properly, the amendment of 1883 should have been incorporated into the Code of Criminal Procedure. Upon the enactment of the "County Law" (chapter 686, Laws 1892), all of said chapter 12 was repealed, as appears by "Schedule of Laws Repealed"; but the act of 1883 is not mentioned in that schedule, nor does it elsewhere appear to have been expressly repealed.

Counsel for appellant contends that, since the act of 1883 was made a constituent part of said chapter 12, it became abrogated by the repeal of that chapter; that the repeal of the whole chapter carried with it all the amendatory statutes. On the other hand, it is argued that the act of 1883 stands as an independent enactment, and since the matter of it is in no way provided for in the county law, nor any provision made upon the subject, it does not fall with the repeal of the chapter into which it has been incorporated. In the consideration of the question presented, be it observed, the court must not only take cognizance of the statutes pro-

viding for the revision and consolidation of the general statutes of the state, but may also examine into the various reports made to the legislature by the commissioners to whom the undertaking was intrusted, for the purpose of ascertaining the method adopted in the work of consolidating, revising, rearranging, and repealing the various laws within the scope of their undertaking.

By chapter 289, Laws 1889, it is provided that the commissioners shall, in their report to the legislature, "suggest such omissions, contradictions and other imperfections as may appear in the existing statutes so proposed to ·be revised and consolidated, with recommendations for the amendment thereof, and they shall provide for the specific repeal of the statutes which would be suspended or covered by the general statutes so proposed by said commissioners." 3 Rev. St. (9th Ed.) § 2757. Evidently, it was the intention of the legislature to impose upon the commissioners the duty of providing for the specific repeal of laws which were intended to be abrogated and superseded by the provisions of the revised or consolidated laws proposed to the legislature for enactment.

A careful examination of the "Schedule of Laws Repealed," following the various general statutes revised and consolidated, shows that it has been the endeavor of the commissioners to obey this injunction, and to fulfill the duty imposed upon them by the legislature, to the very letter; for it appears, from a thorough inspection and comparison of these schedules with the sections of the Revised Statutes as amended, that the purpose of the revisers has been, not only to repeal the particular chapter or article of the Revised Statutes, but also to specify each and every statute that may have been passed amending any particular section or sections thereof. Of course, the omission to specify in the schedule a particular statute, whether original or amendatory, might not save it from repeal, where the revision contains provisions upon the same subject; but where the amendatory statute omitted from the schedule is designedly omitted, because it is not germane to the matters embraced in the revision, and does not properly come within the classification, it does not necessarily follow that it is abrogated merely because much of the original chapter of which it is a part is repealed. The original chapter is expressly repealed, because all, or almost all, of its provisions, are embodied into the revision. The provisions of the law of 1883 have no relation to counties, or the powers and duties of any county officer, but peculiarly appertain to the functions of the courts. In respect to an amendatory statute of that character, it was particularly incumbent upon the commissioners to provide for its specific repeal. There was no reason whatever why this statute should be repealed by a revised law relating to counties and county officers, and it is evident from the report of the commissioners made to the legislature that it was not intended to specify it in the schedule of laws repealed, but, on the contrary, it was reserved for repeal by laws of different character, and for that reason it was designedly omitted from this schedule. This will appear from an examination of the reports of the commissioners of statutory revision.

In the report of the commissioners of statutory revision for the year 1890, and transmitted to the legislature of 1891, they state that they present therewith drafts of amendments to the three Codes, "containing provisions in the statutes consolidated and repealed which belong more properly in such Codes than in the new chapters of the general laws"; that "following each new chapter reported, except the amendments to the Code, is an appendix containing the laws revised by such chapter, and proposed to be repealed by it, with cross-references, so that any person with the report before him can compare each section of the revision with the corresponding provisions of existing laws."

In their report for the year 1891, made to the legislature of 1892, the "County Law," among many other general laws revised, was presented for adoption. In the report it is stated that "various amendments to the Codes were also reported, for the purpose of including therein all provisions in the general laws revised which relate to practice and proceedings in the civil and criminal courts, and to penal offenses." In part 2 of the report, at page 1361, the commissioners propose "An act to amend the Code of Criminal Procedure." "The portions and sections of the Code of Criminal Procedure corresponding to those hereinafter specified are amended to read, respectively, as follows, to take effect October 1, 1892." Among the sections following is section 250: "General Duties of District Attorneys, Special District Attorneys and Their Assistants." This section embodies said section 90 of the Revised Statutes as amended by the Laws of 1883, and also section 89, which is also enlarged and extended. A reference in a note to the proposed section (section 250) shows that it was designed to take the place of and supersede said sections 89 and 90. It will be observed that there is a change in the phraseology of the amendment of 1883. It reads:

"When the district attorney or his assistant shall not be in attendance at any term of any court of record which he is required to attend, or shall be unable or disqualified from acting, or there is a vacancy in such office, the court may, by an order entered in its minutes, appoint some attorney to act as special district attorney during such absence, inability, disqualification or vacancy."

Following the proposed Code amendments (at page 1403) is a proposed "Act to repeal certain acts and parts of acts." "The following acts and parts of acts are hereby repealed, to take effect May 1st, 1892." Here follows a "Schedule of Laws Repealed." Chapter 12 of part 1 of the Revised Statutes is not mentioned in this schedule, but chapter 123 of the Laws of 1883 is specified, with a statement that it is to be found in the Code of Criminal Procedure, erroneously stated as 222.

Immediately following this repealing statute comes the county law, with the "Reviser's Note" prefixed thereto (page 1409), in which they state that:

"The following draft of a county law is designed mainly to take the place of the following statutes: Chapter twelve, part 1, of the Revised Statutes,

entitled 'Of the Powers, Duties and Privileges of Counties and of Certain County Officers,' and laws since passed, and relating thereto, as contained in the Revised Statutes, eighth edition, pages 1019–1081."

They also state that:

"The classification of the laws outlined in the last annual report of the commission has been adhered to, and such provisions of these statutes as more properly belong to either of the Codes have been omitted from this chapter. * * * Many of the laws comprised in the Schedule of Laws to be repealed by this chapter will be found in the Appendix, at pages 1508 to 1653. There is also a reference under most of the sections of the revision to the pages of the eighth edition of the Revised Statutes, and to the chapters of the Session Laws, where the present statutes will be found, which are to be superseded by the revision."

Turning to the proposed county law (sections 200–204), we find that it was not intended to supersede sections 89–92 of the Revised Statutes by any new enactment; but in the annexed schedule of laws to be repealed is specified the whole of said chapter 12, pt. 1, of the Revised Statutes, though the amendatory act of 1883 (chapter 123) is not mentioned.   Page 1512a of Report.   Turn now to "Appendix F, Laws to be Repealed by the County Law."   Page 1508. At page 1574 will be found said sections 89, 91, 92, and section 90, as amended by the Laws of 1883, copied verbatim from page 1066 of the eighth edition of the Revised Statutes.   This would seem to indicate an intention to repeal, by the county law, section 90 as amended; but it is also indicated that its provisions were to be incorporated into the "Code of Civil [Criminal] Procedure."

It was proposed that the county law should take effect May 1, 1892, but it was enacted to take effect May 12th.   If the legislature had enacted the proposed Code amendments, the question here presented would not have arisen, but it failed to carry into effect the intentions of the commissioners.   It will be noticed that the proposed amendments to the Code of Criminal Procedure were intended by the commissioners to take effect October 1, 1892, but the repealing act connected with it was to take effect long before that time, viz. May 1, 1892.   If this had been done, then section 90, as amended by the Laws of 1883, would have been abrogated for that period of time.   But it is hardly possible that such a blunder would have been committed when it came to enacting these laws. We have said that it would seem to appear to have been the intention of the revisers, as indicated by the "Appendix F, Laws to be Repealed by the County Law" (page 1508), to repeal chapter 123, Laws 1883; but we are of the opinion that this supposed intention is overborne by the circumstance that this chapter was designedly omitted from the schedule, and was reserved for repeal by the repealing act connected with the acts to amend the Code of Criminal Procedure, as appears by the schedule following.   It was not the design of the revisers to repeal sections of the various laws revised which were reserved for incorporation into the Codes, except by a repealing act, to be enacted by the adoption of the proposed amendments to the different sections of the Codes.   But they have clearly committed a blunder in not reserving sections 89 and 91

from the repeal of chapter 12. In view of the plan or scheme adopted and carried out for the revision, consolidation, and classification of the statutes, and the method adopted for the specific repeal of the various statutes, in obedience to express legislative direction, we must hold that it evidently was not the intention to repeal Laws 1883, c. 123, by the schedule annexed to the county law, but that it was reserved for repeal upon the enactment of the proposed section 250 of the Code of Criminal Procedure. The design of the schedule is to show what laws are superseded by the provisions of the revised law, and which consequently should be abrogated and repealed, but not to specify provisions of laws that are intended to be incorporated into the Code or other laws to be revised. By the Laws of 1847, the court was empowered to designate some suitable person to act as district attorney whenever there should occur a vacancy at the term of the court, or the district attorney should from any cause be unable to attend the term of court. The construction contended for by the appellant's counsel of the provisions of the amendatory act of 1883, if adopted as the true and only interpretation that may properly be given to the language employed, would be to deprive the court of this power as it was previously exercised, and make the exercise of the power conditional upon the absence or disqualification of the assistant, or the existence of a vacancy in that office. We think this would be a very literal interpretation of certain of the words in which the statute is expressed, and could only be adopted by disregarding the true purpose and spirit of the statute and the fairly manifest intention of the legislature. When it is considered that the law directs the employment of an assistant to the district attorney, we must assume that there exists an actual necessity for his employment, and, consequently, that the presence of both is necessarily required for the adequate and proper discharge of the duties of the office. That being so, why should the absence or disqualification of both be required to the exercise of the power of the court to fill up the complement of the office? Clearly, this act was not designed to limit, or in any manner restrict, the power as it had theretofore been exercised for the period of 60 years.

We are of the opinion that the power of the court to appoint a special district attorney in case of the absence or disqualification of the district attorney or of a vacancy in such office is untrammeled by any other conditions whatever. Keeping in view the prior statutes upon the subject, and the nature, character, and purpose of the act of 1883, we think this is the true interpretation of the language employed, and effectuates the legislative intention. It will be noticed that the statute authorizes the designation of a person to act as a special district attorney, but does not in terms authorize a special assistant district attorney. Now, the district attorney being absent, why may not the court appoint a special district attorney to act in his place and stead, as it had heretofore exercised such power? Because, it is argued, he has an assistant, and therefore the office of district attorney cannot be temporarily filled while the assistant is in attendance and ready, but perhaps

not able, to discharge all the duties of the office at that term of the court. We do not think that was the legislative intention. An assistant may be a young and inexperienced lawyer, and may be lacking the requisite ability to conduct successfully or properly the important prosecutions that may be presented. It would be strange that the court should not, under such circumstances, have the power to appoint an able and experienced lawyer to prosecute important cases, simply because there is an assistant, who may or may not be competent or able to perform all the duties incumbent upon the office of district attorney. As we said before, we cannot perceive any intention to be fairly and reasonably derived from the words of the statute to deprive the court of the power it formerly possessed and exercised, to appoint a special district attorney during the absence of the district attorney. By so doing, the court but effectuates the legislative intention that two or more officers are requisite to properly perform the business of the office.

The cases are numerous where the courts have construed the word "and" as "or," and vice versa, when the reason and spirit of the law required or justified it. "The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of any other words, and one read in place of the other, in deference to the meaning of the context." Suth. St. Const. 252 et seq. "And" is often used interchangeably with "or," the meaning being determined by the context. The grammatical sense of words is not adhered to in the construction of either a deed or a will, where a contrary intent is apparent; and, to give effect to the intention of parties, the word "and" may be read "or." Jackson v. Topping, 1 Wend. 388. This principle, that "and" and "or" are convertible as the sense and intent may require, applies to their use in statutes. Townsend v. Read, 10 C. B. (N. S.) 308; Boyles v. McMurphy, 55 Ill. 236; Eisfeld v. Kenworth, 50 Iowa, 389; Simpson v. Morris, 3 Yeates, 104; People v. Sweetser, 1 Dak. 308, 46 N. W. 452; Porter v. State, 58 Ala. 66; Granite Co. v. Devereux, 72 Me. 422. And this is the rule even in a criminal statute. State v. Myers, 10 Iowa, 448; Miller v. State, 3 Ohio St. 476; Streeter v. People, 69 Ill. 595. Observe, also, in the statute under consideration, that the personal pronouns "he" and "his" are used in the singular; indicating that the provisions have reference to the absence or inability of one person only.

We are of the opinion that the court had full power and authority to make the appointment which it made, and that the person so designated was duly authorized to appear before the grand jury, and perform the duties which were performed by him.

We have examined the other objections made by defendant to the legality of the judgment and orders appealed from, but discover no error calling for their reversal. The evidence was sufficient to require a submission of the case to the jury, and the charge of the

learned .court explicitly confined the jury to the consideration of one count in the indictment; and these instructions were fully comprehended and followed by the jury, as appears from the verdict rendered. That verdict was fully justified by the evidence, and should not be disturbed. Code Cr. Proc. § 684.

The judgment and orders appealed from should be affirmed, and the judgment of the appellate court entered in the judgment roll, and a certified copy of the entry forthwith remitted to the clerk of Monroe county, pursuant to sections 547 and 548, Code Cr. Proc.

WARD, J., concurs in result.

HARDIN, P. J. (concurring in result). Undoubtedly, it was assumed in the oyer and terminer, on the 4th day of March, 1895, that, by reason of the sickness and inability to attend and perform the duties required of the district attorney at that term of court, the court had authority to make the order appearing in the record, to wit: "Ordered that Daniel W. Forsyth, ·Esq., an attorney at law residing in said county, be, and he hereby is, appointed special district attorney to act as such during this term." Apparently, the court of sessions, when it denied the motion to dismiss the indictment, assumed that the act of 1883 was not repealed. However, for the reasons stated in the opinion of FOLLETT, J., it is quite evident that the court of sessions was in error. Notwithstanding that error, it was contended before us that the court of oyer and terminer had inherent power, in the absence of statutory authority, to appoint an attorney and counselor at law in good standing, residing in the county, as special district attorney, when it was made to appear that the district attorney was absent by reason of sickness; and attention was called to the cases of Dukes v. State, 11 Ind. 557; Com. v. McHale, 97 Pa. St. 397; State v. Harris, 12 Nev. 414; Shafer v. State, 18 Ind. 445. The statutes of the states in which the decisions referred to were made differ so essentially from the statutes of this state that the cases cited do not furnish controlling authority upon the question of the inherent power of the court. It has also been suggested that the appointee was a de facto officer, and, in the absence of proof that his acts were improper, that no error can be predicated in respect thereto. See People v. Petrea, 30 Hun, 111, affirmed 92 N. Y. 128. In Carpenter v. People, 64 N. Y. 483, it appeared that the person who acted as commissioner of jurors had been appointed, and, under color of the appointment, he assumed to, and did, exercise the functions of the office. Rapallo, J., says: "He was therefore a de facto officer, whose acts were valid as to the public, so long as he continued to occupy and exercise the functions of the office."

From an inspection of the record before us, we find that the defendant had a trial in the sessions, and that no error was committed in the progress of the trial, and that the conviction is in accordance with the evidence given tending to establish the guilt of the defendant.

Section 684 of the Code of Criminal Procedure provides as follows:

"Neither a departure from the form or mode prescribed by this Code, in respect to any pleadings or proceedings, nor any error or mistake therein, renders it invalid, unless it have actually prejudiced the defendant, or tend to his prejudice, in respect to a substantial right."

Inasmuch as there is no proof that the special appointee "was present with the grand jury during the expression of their opinions or the giving of their votes upon any matter," in violation of section 264 of the Code of Criminal Procedure, and in view of section 684 of the Code of Criminal Procedure, already quoted, and of the provisions of section 542 of the Code of Criminal Procedure, providing that, "after hearing the appeal, the court must give judgment, without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties," it seems proper to sustain the conviction and judgment entered thereon, and to disregard the technical objection urged by the defendant.

In Cox v. People, 80 N. Y. 500, it was held:

"Mere irregularities in the drawing of grand and petit jurors do not furnish a ground for reversing a conviction, unless it appears that they operated to the injury or prejudice of the prisoner."

In the course of the opinion delivered in People v. Petrea, supra, Andrews, J., said:

"We are of opinion that no constitutional right of the defendant was invaded by holding him to answer to the indictment. The grand jury, although not selected in pursuance of a valid law, were selected under color of law and semblance of legal authority. The defendant, in fact, enjoyed all the protection which he would have had if the jurors had been selected and drawn pursuant to the general statutes. Nothing could well be more unsubstantial than the alleged right asserted by the defendant under the circumstances of the case. He was entitled to have an indictment found by a grand jury before being put upon his trial. An indictment was found by a body drawn, summoned, and sworn as a grand jury, before a competent court, and composed of good and lawful men. This, we think, fulfilled the constitutional guaranty. The jury which found the indictment was a de facto jury, selected and organized under the forms of law. The defect in its constitution, owing to the invalidity of the law of 1881, affected no substantial right of the defendant. We confine our decision upon this point to the case presented by this record, and hold that an indictment found by a jury of good and lawful men selected and drawn as a grand jury under color of law, and recognized by the court and sworn as a grand jury, is a good indictment by a grand jury, within the sense of the constitution, although the law under which the selection was made is void."

In People v. Dimick, 107 N. Y. 15, 14 N. E. 178, it was held:

"It is the duty of an appellate court to give, in a criminal action, with reason and discretion, full force and effect to the provision of the said Code (section 542) declaring that, 'after hearing the appeal, the court must give judgment, without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties,' and the one which provides (section 684) that 'neither a departure from the form or mode prescribed by this Code in respect to any pleadings or proceedings, nor any error or mistake therein, renders it invalid unless it has actually prejudiced the defendant.' "

In the course of the opinion delivered in Dolan v. People, 64 N. Y. 485, it was said:

"It is not apparent how the alleged irregularities harmed the defendant, and it is certain that they had no relation whatever to the question of his guilt or innocence of the crime charged. Under such circumstances, the indictment should be upheld, unless the facts pleaded point out some vital error."

That sentiment was approved in People v. Petrea, 30 Hun, 108, in the opinion delivered by Bockes, J.

Following the statutes and the authorities cited, and because it does not appear that the defendant was prejudiced by the irregularity complained of, and it is inferable, very clearly, that he was not prejudiced thereby, I am led to vote for affirmance of the conviction and judgment and orders.

FOLLETT, J. (dissenting). March 18, 1895, the defendant, then 14 years of age, was indicted, at a court of oyer and terminer held in and for the county of Monroe, for—First, burglary in the third degree (section 498, Pen. Code); second, grand larceny in the second degree (section 534, Id.); third, receiving stolen property (section 550, Id.). This indictment was sent to the court of sessions of Monroe county, there to be disposed of. March 30, 1895, a motion was made by the defendant to set aside the indictment, on the ground that Daniel W. Forsyth assumed to act as special district attorney for the county when the charge against the defendant was investigated by the grand jury, examined the witnesses, drafted the indictment, and signed it as special district attorney, which motion was denied. April 3, 1895, the defendant pleaded not guilty. On the same day he was tried before the Monroe county sessions, and found guilty on the first count in the indictment,—of burglary in the third degree. Thereupon the defendant moved for a new trial, pursuant to section 465, Code Cr. Proc., which was denied. April 8, 1895, the defendant was sentenced to imprisonment in the State Industrial School at Rochester, N. Y. A judgment was entered, from which and the two orders the defendant has appealed.

Section 313 of the Code of Criminal Procedure provides:

"Sec. 313. The indictment must be set aside by the court in which the defendant is arraigned, and upon his motion, in either of the following cases: (1) * * * (2) When a person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment was under consideration, except as provided in sections 262, 263, and 264."

Sections 262, 263, and 264 provide that the district attorney may appear before the grand jury for the purpose of examining the witnesses, giving legal advice and information. Section 276 provides that indictments shall be signed by the district attorney.

Daniel W. Forsyth was present during the session of the grand jury while the charge embraced in the indictment was under consideration, and, unless he was legally appointed and acting as special district attorney, his presence was in violation of the statute, and the command of the Code is that in such case the in-

dictment "must be set aside." When this indictment was found, George D. Forsyth was the district attorney of Monroe county, duly elected as such at the general election held in 1892, and Howard H. Widener was the first, and Stephen J. Warren was the second, assistant district attorney of said county, duly appointed and acting as such, pursuant to section 203, c. 18, Gen. Laws (The County Law), as amended by chapter 70 of the Laws of 1893 (1 Rev. St., 9th Ed., p. 648). Both of the assistant district attorneys were present at the term at which the indictment was found, both of whom were qualified to act in this case; but the district attorney was unable to attend that court by reason of his sickness and absence from the state. Thereupon the oyer and terminer made and entered an order appointing Daniel W. Forsyth special district attorney during the term of the court. It appears by the record, and is undisputed, that he attended before the grand jury upon the investigation of this case, examined the witnesses, drafted the indictment, and signed his name thereto as special district attorney. Was there any statute in existence allowing the court to appoint a special district attorney in any case, and especially in case the assistant district attorneys were present and engaged in the discharge of their duties?

By section 90, tit. 2, c. 12, p. 1, Rev. St., it was provided:

"Sec. 90. When any district attorney shall fail to attend any of the courts above specified, it shall be the duty of such court to appoint some proper person, being an attorney or counsellor at law, to transact the business of the district attorney during the sitting of the court; and the person so appointed shall be entitled to the same compensation for the services he shall perform, that the district attorney would have been entitled to, for the like services, and his account shall be audited and paid in the same manner."

This section was taken from section 1, c. 254, Laws 1824 (repealed by Laws 1828, 2d meeting, p. 57, c. 21); and it remained the law until 1847, when section 33, c. 470, Laws 1847, was passed, which provided:

"Sec. 33. When the office of district attorney of any county shall be vacant at the term of any court of oyer and terminer, or court of sessions of any county, or the district attorney shall from any cause be unable to attend the term of any such court, the members of the court, except the justice of the supreme court, may designate some suitable person to act as district attorney at such term of the court; and the person so designated shall have and exercise the same powers and discharge the same duties as district attorneys elected in the manner provided by law, and shall be entitled to such compensation, to be paid out of the treasury of the county, as the board of supervisors shall allow."

This statute was substituted for section 90 of the Revised Statutes, above quoted, to meet the provision of section 8 of article 6 of the constitution of 1847, which provided:

"They [judges of the court of appeals and justices of the supreme court] shall not exercise any power of appointment to public office."

This constitutional provision was abrogated by the amendments to the constitution ratified in 1869, since which time justices of the supreme court may and have exercised the power to appoint public officers when authorized by the legislature.

Prior to June 21, 1882, courts of oyer and terminer, except those in the city and county of New York, were held by a justice of the supreme court, and by county judges and justices of sessions; but, by section 1 of chapter 360 of the Laws of 1882, section 23 of the Code of Criminal Procedure was amended, and provides that courts of oyer and terminer shall be held by a justice of the supreme court without an associate. County judges and justices of sessions being no longer members of courts of oyer and terminer, the power of a justice of the supreme court presiding at an oyer and terminer to appoint a special district attorney was doubted, and additional legislation was deemed necessary, the result of which was the passage of chapter 123 of the Laws of 1883, which provided:

"Section 1. Section ninety of article seven, title two, chapter twelve, part one of the Revised Statutes, is amended so as to read as follows: 'Sec. 90. Whenever there is any vacancy or the district attorney of any county and his assistant, if he has one, shall not be in attendance at a term of any court of record, which he is by law required to attend, or shall be unable by sickness, or by being disqualified from acting in a particular case, to discharge his duties at any such term, the court may, by an order entered in its minutes, appoint some attorney at law residing in the county, to act as special district attorney during the absence, inability or disqualification of the district attorney and his assistant; but such appointment shall not be made for a period beyond the adjournment of the term at which made. The special district attorney so appointed shall possess the powers and discharge the duties of the district attorney during the period for which he shall be appointed. The board of supervisors of the county shall pay the necessary disbursements of, and a reasonable compensation for the services of the person so appointed and acting.'

"Sec. 2. Section thirty-three of chapter four hundred and seventy of the Laws of eighteen hundred and forty-seven is hereby repealed.

"Sec. 3. This act shall take effect immediately."

It will be observed that by this statute two things are accomplished: (1) Section 90 of the Revised Statutes, as passed in 1828, was abrogated, and a new section substituted in its stead, which became section 90 of chapter 12 of part 1 of the Revised Statutes of this state; (2) section 33 of chapter 470 of the Laws of 1847 was repealed.

By chapter 686 of the Laws of 1892 (chapter 18 of the General Laws, "The County Law"; 1 Rev. St., 9th Ed., 593, 660), the twelfth chapter of the first part of the Revised Statutes was repealed, but section 2 of chapter 123 of the Laws of 1883, being no part of the Revised Statutes, was not repealed; so that since the passage of the county law, in 1892, no statute has existed authorizing courts to appoint special district attorneys.

The argument that the commission of statutory revision and the legislature could not have intended to repeal a statute so important and necessary, without providing a substitute therefor, is entitled to no weight. It has been repealed in express terms, and that seems to me to be an end of the matter. Courts do not presume that the legislature is ignorant of the statutes relating to subjects upon which it undertakes to legislate. Cox v. Mayor, etc., 103 N. Y. 519, 524, 9 N. E. 48. Nor can they hold that a statute which has been expressly repealed is not repealed because it ought not to have

been. This would be usurping a power which the courts have not, and should not possess. So far as I know, it has never been doubted or argued that the repeal of a chapter, title, or section of the Revised Statutes did not carry down with it all previous amendments of the chapter, title, or section repealed. Since 1828 it has been the practice of the legislature to repeal chapters, titles, and sections of the Revised Statutes by referring to the chapters, titles, and sections; and a decision that those repealing acts did not repeal all previous amendments to those statutes would throw the law of this state into inextricable confusion.

If it could be held that section 90 of chapter 12 of the Revised Statutes, as amended in 1883, is still in force, I should be unable to hold that a court could appoint a special district attorney unless the district attorney of the county and his assistant, if he has one, should not be in attendance at the term. Under section 90, of the Revised Statutes, above quoted, the district attorney of the county and his assistant, if he has one, must both be absent or disqualified, and in such a case "the court may *   *   * appoint some attorney at law *   *   * to act as special district attorney during the absence, inability or disqualification of the district attorney and his assistant." The statute is not a disjunctive, but it is a conjunctive, one, and all the conditions must exist before an appointment can be made under it. The word "and," in a statute, may be construed to mean "or" for the purpose of carrying into effect the clear intent of the legislature; and for the same purpose "or" may be construed to mean "and," but never for the purpose of thwarting the intention of the legislature, nor for giving a meaning to the statute not clearly intended. The plain intent of the legislature was to authorize the court to appoint a special district attorney in case there was no officer present having authority to take charge of the criminal cases pending in the court, and so prevent a failure of justice. There was no such exigency at the oyer and terminer at which this indictment was found. Two assistant district attorneys were present, and were qualified to act in this case.

It is suggested that the oyer and terminer had inherent power to appoint a special district attorney, and Dukes v. State, 11 Ind. 557, is cited in support of the suggestion. The appointment considered in that case was made pursuant to section 5 of chapter 3 of the Revised Statutes of the State of Indiana (2 Rev. St. 1852, p. 386; 2 Rev. St. 1870, p. 430; 2 Rev. St. 1888, § 5865), which provides: "If any prosecuting or district attorney fail to attend any court of his circuit or district, as the case may be, the judge of such circuit or district shall appoint some one to prosecute for such term." In the case cited, the district attorney was absent, and the court appointed an attorney for the term who had been retained to defend a person whose case was pending before the grand jury, and thereupon the court appointed another attorney to prosecute that case. The court having the power to appoint for the term, it was held that it might appoint for a part of a term or for one case. In considering the case, the term "inherent power" was used, but the case was not decided on that ground, but upon the ground that power was given

by the statute quoted. If it be assumed that the oyer and terminer had inherent power to appoint a special district attorney so as to prevent the failure of justice, there was, as before stated, no exigency requiring the exercise of such a power, as there were two assistant district attorneys present at the term, who were qualified to act.

It is also suggested, though I think the point is not much relied on, that Daniel W. Forsyth was a "de facto district attorney." A de facto officer is one who, by virtue of an election or appointment claimed to be valid, enters upon and assumes to discharge the duties of a public office; but the term does not denote one who assumes to perform, for a brief period, some of the duties of an office. Daniel W. Forsyth did not claim to be the de jure or de facto district attorney, for that office was filled.

In the opinion of the learned presiding justice it is said, in effect, that assuming that there was no statutory or inherent power in the court to make this appointment, and that Daniel W. Forsyth had no authority to appear before the grand jury, examine the witnesses, draft and authenticate this indictment, no harm was done to the defendant, and the judgment of conviction should be sustained, under sections 542 and 684 of the Code of Criminal Procedure, which are as follows:

"Sec. 542. After hearing the appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

"Sec. 684. Neither a departure from the form or mode prescribed by this Code, in respect to any pleadings or proceedings, nor any error or mistake therein, renders it invalid, unless it have actually prejudiced the defendant, or tend to his prejudice in respect to a substantial right."

These sections are not designed to cure errors affecting the jurisdiction of courts to try a defendant for a felony. Before a person can be legally tried for a felony under the constitution, a legal indictment must be found in the manner prescribed by the statute; and the section of the Code quoted at the beginning of the opinion provides that, in case an unauthorized person is present when the grand jury is investigating the charge embraced in the indictment, it must be set aside for this cause on the motion of the defendant, which, to my mind, makes it clear that it was not intended that sections 542 and 684 should cure this error.

The judgment should be reversed, and the defendant discharged.